MALCOLM CLIFTON DAVENPORT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8394. Promulgated January 11, 1946.

*Alfred F. Burgess, Esq.*, for the petitioner.
*Edward L. Potter, Esq.*, for the respondent.

**OPINION.**

ARUNDELL, *Judge*: Initially, we are confronted with the problem of whether petitioner, in computing his gain or loss from the sale of the property in question, was entitled to use as a basis its value on July 16, 1928, at which time he received the property from the trustee, as is contended by him, or whether the proper basis was the value of the property at the time of his decedent's death, as is urged by the respondent. The applicable statute, section 113 (a) (5),[1] is set out in the margin.

Petitioner concedes that title to a vested interest in an estate relates back to the death of the decedent. He argues, however, that his interest, by the terms of his grandfather's will, was contingent and that he acquired no taxable interest until the contingency was removed and until his interest was transformed into an indefeasible one. The Commissioner, on the other hand, takes the position that, since the property was acquired by inheritance, irrespective of whether the interest was originally contingent or vested, its basis in the hands of petitioner is the fair market value at date of the decedent's death, relying upon *Helvering* v. *Reynolds*, 313 U. S. 428.

The *Reynolds* case appears to be dispositive of the issue here. In that case the taxpayer had acquired through a distribution by a trustee in 1934 certain securities which were owned by his father at the time of his death in 1918 and had been placed in the trust under the terms of his will. The taxpayer's original interest was in the remainder and was found by the lower court to have been a contingent one under the laws of North Carolina. He sold a portion of the securities in 1934 and claimed as his basis their fair market value at the time they were distributed to him. The Supreme Court held that the basis was the value of the securities at the death of taxpayer's decedent. Therein the Court pointed out that even a vested remainder does not have all the attributes of ownership and that the test is not whether there was full enjoyment of the property prior to its distribution to the beneficiary, but whether he had acquired an interest which ultimately ripened into complete ownership. The tax is on gains realized by the taxpayer and to carry into the computation of those gains the value of the property at the time the taxpayer had only a contingent interest in it is not to tax him on values which he never received. See also *Augustus* v. *Commissioner*, 118 Fed. (2d) 38.

Petitioner contends that in the *Reynolds* case the estate was to be

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

*     *     *     *     *     *

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition.

divided at the death of the testator and two-thirds thereof was to be deposited with the trustee to collect the income and ultimately pay each child his share of the corpora when he became 28 years of age, and that there was no provision for a valuation and no requirement that the children accept a valuation fixed at any specified time. We find no particular merit in such argument. The important factor, in the light of the above decisions, is that petitioner's interest was acquired by "bequest, devise, or inheritance" within the meaning of the statute and that, irrespective of its character at the inception of the interest, it ripened into complete ownership by him.

As an alternative argument the petitioner contends that if his basis is the value on June 30, 1918, the fair market value as of that date was in excess of $90,000, the amount at which it was included in the decedent's gross estate for estate tax purposes. Petitioner claims that its fair market value was, in fact, $125,000.

We have found as a fact that the fair market value of the property at the decedent's death was $109,300, of which $90,000 represented the value of the building and $19,300 the value of the land. Such finding is based upon the testimony of two witnesses, each of whom was entirely familiar with the history of the property from the time the building was constructed in 1915 to the present and who, having been engaged in the real estate business in the locality for 38 and 40 years, respectively, were, without doubt, qualified to testify as to the 1918 value of local real estate generally. The testimony was to the effect that the building was constructed of the finest material available in 1914–1915 and that the labor costs varied from 10 cents per hour to a top price of 35 cents per hour. The larger portion of materials used and practically all of the equipment installed were acquired at wholesale prices. The architectural plans were furnished at practically no cost to the builder. The value of the land and building had appreciated substantially by 1918 over their 1914–1915 cost. The building could not have been replaced in 1918 for less than $90,000. The net return from the operation of the property, without deduction for depreciation, was approximately 10 percent on cost for the years in and around 1918. As to the fair market value on June 30, 1918, one witness testified that in his opinion the property could readily have been sold in 1918 at from $115,000 to $120,000, divided $95,000 to $100,000 for the building and $20,000 for the land, and that those figures represented the value of the property. The other witness placed a fair market value of from $85,000 to $90,000 on the building and $15,000 to $18,000 on the land. It appears from the evidence that the building has for many years been valued at $90,000 for purposes of computing the depreciation allowance. The fair market value placed upon the land at decedent's death in 1918 for purposes of the estate tax was $19,300. The evidence is not substantially out of line with

that valuation and we are of the opinion that it should not be disturbed. We have concluded, however, that the value of the building was greater than returned for estate tax purposes and that its fair market value was, in fact, $90,000. Cf. *Stella H. McConnell*, 29 B. T. A. 32; *Anson Evans et al., Trustees*, 29 B. T. A. 710.

With respect to the sum of $329.80 claimed by petitioner as a deduction from the sale price, we are without sufficient information to make a determination. Accordingly, for lack of evidence, the petitioner's claim may not be sustained.

As to the delinquency penalty, the petitioner takes the view that his course of action was entirely reasonable and that the negligence of the accountant in failing to file the return until April 16, 1942, should not result in the imposition of the penalty. We have noted the irregularity in the acknowledgment on the return. However, we need not dwell upon that. It is well settled that the burden of filing returns can not be avoided by placing the responsibility upon an agent. *Eagle Piece Dye Works*, 10 B. T. A. 1360; *Estate of Charles Curie*, 4 T. C. 1175; *Berlin* v. *Commissioner*, 59 Fed. (2d) 996. There is no indication whatsoever that there was any reasonable cause for the failure of the agent to file a timely return. Accordingly, the imposition of the penalty is upheld.

*Decision will be entered under Rule 50.*