J. Raymond Dyer and Jean Russell Dyer v. Commissioner.
Dyer v. Commissioner
Docket No. 78358.
United States Tax Court
T.C. Memo 1961-141; 1961 Tax Ct. Memo LEXIS 209; 20 T.C.M. (CCH) 705; T.C.M. (RIA) 61141; May 18, 1961
*209 1. Petitioners claimed a deduction on their joint return of $100 as a casualty loss resulting from the breaking of an antique vase by a family cat. Held, the loss in question was not a casualty loss within the meaning of the applicable statute. 2. Petitioner J. Raymond Dyer sold some shares of United Shoe Machinery Corporation common stock in the taxable year. In reporting gain on the sale he used as his basis the fair market value of the stock when it was issued to him in December 1954. The Commissioner determined that the basis for gain or loss on the sale of the stock was its fair market value on March 1, 1913, petitioner having acquired it under the will of his maternal grandmother who died in 1903. Held, the Commissioner is sustained in his determination of the basic date for the valuation of the stock but he erred in his determination of the fair market value of the stock on such date. 3. Held, the Commissioner is sustained in his determination of petitioners' basis to be used in computing petitioners' loss on the sale of a certificate of 100 shares of Interstate Bakeries Corporation stock acquired under the will of petitioner J. Raymond Dyer's father who died in 1954. *210 J. Raymond Dyer, pro se, 418 Olive St., St. Louis, Mo. William J. McNamara, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioners' income tax for the years 1955 and 1956 in the respective amounts *211 of $409.25 and $139.12. The deficiency for 1955 is due to four adjustments made by the Commissioner to the net income reported by the petitioners on their joint return for that year. Petitioners did not assign any error as to adjustment (d) and concede that the Commissioner did not err in making that adjustment. Respondent concedes that his adjustment (a) was error. Therefore, only adjustments (b) and (c) are in dispute and petitioners assign error as to each of these adjustments. Adjustments (b) and (c) are explained in the deficiency notice as follows: (b) In your return you claimed a deduction for a casualty loss of $100.00 as a result of the breaking of a vase by your cat. It is held such event did not constitute a casualty loss under the provisions of sec. 165(c)(3) of the Internal Revenue Code of 1954. Furthermore, if your vase was broken and you did sustain a casualty loss, you have not substantiated the fair market value of the vase immediately before and after such breaking nor have you substantiated your cost or other basis of the vase. Taxable income is therefore increased in the amount of $100.00. (c) In your return you claimed a deduction of *212 $1,000.00 as loss from sale of capital assets. It has been determined that your basis in Interstate Baking Corporation no par common stock was $435.00 in lieu of $1,271.50 and your basis for the shares of United Shoe Machinery Corporation common stock was $2,057.59 in lieu of $4,233.00, resulting in a net taxable gain of $696.00, as set forth in Exhibit A. Taxable income is therefore increased in the amount of $1,696.00. The deficiency for 1956 is due to the determination by the Commissioner that petitioners had no capital loss carryover from the taxable year 1955. The latter adjustment is explained in the deficiency notice as follows: (a) In your return you claimed a capital loss carry over from 1955 in the amount of $702.40, offset in part by a long term capital gain of $56.35, as a net deduction of $646.04. As you realized a net taxable capital gain of $696.00 in 1955 as shown above, there is no capital loss carry over from that year and your net taxable capital gain for 1956 is $28.18. Taxable income is therefore increased $674.22. Petitioners by appropriate assignments of error contest the determination by the Commissioner. Findings of Fact Some of the facts are stipulated *213 and are incorporated herein by this reference. J. Raymond Dyer and Jean Russell Dyer are husband and wife and reside in St. Louis, Missouri. They filed their joint income tax returns for the taxable years 1955 and 1956 with the district director of internal revenue at St. Louis. Petitioner J. Raymond Dyer is an attorney and petitioner Jean Russell Dyer is employed as an interior decorator in St. Louis. J. Raymond Dyer will sometimes hereinafter be referred to as petitioner. Issue 1. Casualty Loss On their income tax return for the year 1955, petitioners claimed a casualty loss deduction of $100 for damages to a vase broken by their household pet, a Siamese cat. The vase was one of a pair given to Jean by her father prior to her marriage to petitioner and was bought by him in France. The vase was one of a matched pair, the pair having a value when acquired by petitioner of $250, and singly a value of $100 each. One of the vases was broken by petitioners' Siamese cat in the course of having its first fit. The cat had developed a neurosis and thereafter had other fits; within a month it was pronounced incurable by the veterinarian and had to be destroyed. Immediately after the *214 accident the broken vase had no value at all. The broken vase was repaired at a cost of $33.49; the value of the two vases was then $133.49. The vases were insured under a comprehensive insurance policy covering loss from fire, theft, tornado, malicious mischief, etc., up to $200 in value but the company refused to reimburse petitioners for any loss arising from damage to the vase. Issue 2. Fair Market Value of United Shoe Machinery Corporation Stock On their income tax return for the year 1955, petitioners reported a short-term capital gain of $45.01 from sale of 83 shares of United Shoe Machinery common stock. They showed the acquisition date of these shares of stock as being December 23, 1954, the date the certificate for the 83 shares was received from the Old Colony Trust Company of Boston, Massachusetts, transfer agent for the corporation. The Commissioner determined that the petitioner acquired his interest in the United Shoe Machinery Corporation common stock from his maternal grandmother, Ellen D. Raymond, hereinafter referred to as Ellen, and determined that the petitioner's basis for computing gain on the disposition was the computed fair market value of the shares *215 as of March 1, 1913, which the Commissioner determined to be $2,057.59. Ellen died in December 1903, a resident of Cambridge, Massachusetts. At the time of her death she owned 90 shares of common stock in the United Shoe Machinery Corporation, hereinafter referred to as United Shoe, which was included in the residue of her estate and bequeathed in accordance with the provisions of Paragraph Eighth of her will, which reads as follows: EIGHTH. All the residue of my estate, of every name and nature, I bequeath and devise to Charles A. Rand of Roxbury and Willard A. Bullard of Wayland, to have and to hold to them and each of them, their successors and assigns upon trust, nevertheless, to manage the same and keep the same safely invested, either in the form, real or personal, in which I may leave it, or otherwise, with all real estate insured for the benefit of all parties in interest, and to pay the net income of said residue to my daughter, Ethel R. Dyer, for the term of her life, and in addition thereto, from time to time, such portion of the principal sum, as, in the exercise of their discretion, to them may seem for her interest and comfort; and upon her death to pay the unexpended *216 principal to her issue taking by right of representation; or, if she leaves no issue, then, to whomsoever she may by will appoint to receive it. The interest of beneficiaries in all the trusts of this will shall be inalienable by anticipation and free from the interference of their creditors. If my said daughter wishes to purchase a house for her own occupation, the Trustee or Trustees, or their successors, may purchase and convey to her, in fee simple, free of trusts, such a house as, in their opinion, is suitable to the social position and assured income of my daughter and her husband. Charles A. Rand died, and Willard A. Bullard declined to act as trustee. Accordingly, pursuant to order of the Probate Court, Middlesex County, Massachusetts, dated December 12, 1905, Joseph L. Hanley, hereinafter referred to as Joseph, of St. Louis was appointed trustee of the trust set up under Paragraph Eighth of Ellen's will. On January 15, 1906, Willard A. Bullard endorsed stock Certificate No. 8731, dated November 16, 1905, for 135 shares of United Shoe common stock over to Joseph, successor trustee under the will of Ellen. On November 15, 1906, Certificate No. 13626 for 13 shares of United *217 Shoe common stock was issued in the name of the estate of Ellen D. Raymond, having been subscribed for under stock rights issued on the aforesaid 135 shares. As a result of stock dividends declared on United Shoe common stock, the following stock certificates were issued in the name of the estate of Ellen D. Raymond, in the dates indicated: % Divi-
No. of
Certificate
Date of
dend
Shares
No.
Certificate
25
37
19472
July 15, 1907
10
18
31673
April 5, 1909
10
20
42717
July 5, 1910
10
22
97437
July 5, 1917
40
98
156323
June 18, 1923
20
68
208322
November 30, 1927 On March 1, 1913, the estate of Ellen D. Raymond owned 223 shares of United Shoe common stock. Ethel R. Dyer, hereinafter referred to as Ethel, petitioner's mother and the beneficiary of the aforesaid trust, died intestate October 22, 1910, leaving petitioner, his brother, and three sisters as her issue. At the date of Ethel's death five stock certificates representing 223 shares of common stock of United Shoe were outstanding in the name of the estate of Ellen D. Raymond. Prior to his departure for military service in World War I, Joseph, as trustee under the will of *218 Ellen, by instrument dated November 16, 1917, executed the following power of attorney to H. Chouteau Dyer, hereinafter referred to as Chouteau, petitioner's father: KNOW ALL MEN BY THESE PRESENTS: That I, Joseph L. Hanley, of Kansas City, Missouri, having entered the service of the United States, and being obliged to travel about in the United States and foreign countries, have made, constituted and appointed, and by these presents do hereby make, constitute and appoint H. Chouteau Dyer, of the City of St. Louis, Missouri, my true and lawful attorney to receive, receipt for and endorse in my name and otherwise negotiate any and all checks or other instruments coming to me as trustee under the will of Ellen D. Raymond, deceased; further to endorse in my name, as such trustee, any and all certificates of stock, bonds or other instrumentalities held by me as trustee aforesaid for the purpose of transferring any such stocks, bonds or other instrumentalities, and I further authorize and empower my said attorney to do each and everything, and to exercise each and every power, which I myself as such trustee possess, and which I am capable of delegating to him. Hereby ratifying and *219 confirming each and every act that my said attorney may do and perform in the premises. [Signatures omitted.] Joseph endorsed in blank certificates representing 223 shares of stock. These shares were acquired by the estate of Ellen D. Raymond prior to March 1, 1913. Another certificate for 22 shares, No. 97437, dated July 5, 1917, was issued in the name of the estate of Ellen D. Raymond, as stock dividend. This certificate was endorsed by Joseph L. Hanley, Trustee, to H. Chouteau Dyer, Curator. On June 18, 1923, Certificate No. 156323 for 98 shares was issued to the estate of Ellen D. Raymond as stock dividend; this certificate was not endorsed. On November 30, 1927, Certificate No. 208322 for 68 shares was issued in the name of the estate of Ellen D. Raymond as stock dividend; this certificate was not endorsed. Pursuant to the power of attorney given him by Joseph, Chouteau thereafter received all dividend payments on the United Shoe stock. Dividend checks were paid to "Estate of Ellen D. Raymond, care of Joseph L. Hanley, care of H. Chouteau Dyer." In making out one of his income tax returns, Chouteau included the following certificate: I hereby certify that the dividends *220 paid by the United Shoe Machinery Company of Boston, Massachusetts, during the year 1945 on the stock standing in the name of the Estate of Ellen D. Raymond on the books of said corporation amounting to $1397.38 were paid to me as the owner and holder of said shares of stock in said company and I have included said sum in the dividends herein accounted for by me and paid the tax thereon. /s/ H. Chouteau Dyer Chouteau treated all the dividends from the 411 shares of United Shoe common stock standing in the name of the estate of Ellen D. Raymond as his own and reported them as his own income in his Federal and state income tax returns. Chouteau died May 3, 1954. After the death of his father in 1954, petitioner found among his father's effects the previously mentioned eight certificates representing 411 shares of United Shoe common stock. Two other shares were made out in the name of H. Chouteau Dyer - these shares are not involved in the dispute herein. Petitioner, as executor of his father's estate, was unable to effect transfer of the 411 shares of stock listed in the name of the estate of Ellen D. Raymond. Accordingly, petitioner, on behalf of himself and his brother and sisters, *221 petitioned the Probate Court, Jefferson County, Missouri, on or about August 25, 1954, to withdraw the Ellen D. Raymond stock from the estate on the grounds that the stock did not belong to Chouteau. The pertinent portions of the petition to withdraw read as follows: 2. Said stock certificates (hereinafter called the Ellen D. Raymond stock), were all either part of the assets of the Estate of Ellen D. Raymond, inventoried January 22, 1904 in the inventory of that estate filed by the executor thereof, Willard A. Bullard (since deceased), in the Probate Court of Middlesex County, Mass., or stemmed, as stock dividends or stock splits, from said assets, and were part of the residuum assets bequeathed under the will of Ellen D. Raymond, filed in said Probate Court, to trustees, and their successors and assigns, in trust, "to pay the net income of said residue to my daughter, Ethel R. Dyer, for the term of her life, and in addition thereto, from time to time, such portion of the principal sum, as, in the exercise of their discretion, to them may seem for her interest and comfort; and upon her death to pay the unexpended principal to her issue taking by right of representation; or, if *222 she leaves no issue, then, to whomsoever she may by will appoint to receive it. The interest of the beneficiaries in all the trusts of this will shall be inalienable by anticipation and free from the interference of their creditors." 3. Ethel R. Dyer, the life beneficiary under said trust, died intestate October 22, 1910. She was petitioners' mother, the first wife of decedent H. Chouteau Dyer, and petitioners are her sole issue, and were her sole issue at the time of her death. 4. Joseph L. Hanley was the trustee appointed by said Probate Court under said trust, and said Ellen D. Raymond stock was turned over to him by said executor of the will of Ellen D. Raymond, and receipted for by him, as shown by said executor's first and final accounting filed in said Probate Court, and approved by said Probate Court November 3, 1909, at which time said estate was closed. 5. Joseph L. Hanley died April 26, 1921, while all of your petitioners, as vested reversionary beneficiaries under said trust, were still minors, and said Ellen D. Raymond stock was turned over to the decedent, H. Chouteau Dyer, petitioners' father. 6. Said decedent continued to hold said Ellen D. Raymond stock to *223 the day of his death, May 3, 1954, and it was found in his safe deposit box thereafter. Throughout that period of time he deposited the income therefrom in an account he maintained in his name, as trustee, in the First National Bank in St. Louis, paying the income tax thereon himself, and making disbursements thereof, from time to time, equally, amongst the five beneficiaries of said trust, your petitioners. 7. Said trust was never terminated, and, though lacking a trustee, is still in existence. All being over the age of 21 years, it is the intention of your petitioners, if this their withdrawal petition be granted, to terminate it. 8. As further reason for this petition for withdrawal your petitioner J. Raymond Dyer, as executor under the will of decedent H. Chouteau Dyer, states that none of the companies which issued said Ellen D. Raymond stock will transfer the same as an asset of said decedent's estate, but will transfer it only as subject to said trust, on the ground, which said petitioner verily believes to be valid, that said Ellen D. Raymond stock is no part of the assets of the estate of H. Chouteau Dyer, deceased, but rather belongs to your petitioners as the vested *224 reversionary beneficiaries under said trust set up under the will of Ellen D. Raymond. 9. Your petitioners also state that the $330.59 balance on deposit in the First National Bank in St. Louis, in decedent's name as trustee, which deposit is listed in said inventory and appraisement, represents undistributed dividends paid on said Ellen D. Raymond stock, and is no part of decedent's estate. A hearing was held on the petition on August 26, 1954, at which time evidence was introduced and the court entered its order authorizing petitioner, as executor of his father's estate, to withdraw the stock registered in the name of the estate of Ellen D. Raymond. There followed correspondence between petitioner and the Old Colony Trust Company relative to effecting transfer of the shares of the estate of Ellen D. Raymond stock and the problem of proving that petitioner and his brother and sisters were the sole issue of their mother, Ethel R. Dyer. On October 5, 1954, petitioner wrote a letter to the assistant vice president of Old Colony Trust Company advising him of a declaration of heirship filed in the Ellen D. Raymond estate listing petitioner and his brother and sisters as sole heirs *225 of Ethel R. Dyer. In that letter petitioner also made the following statement to the transfer agent: Besides, all of the Ellen D. Raymond United Shoe Machinery Corporation stock, excepting Certificate No. 208322, for 68 shares of common, issued November 30, 1927, and Certificate No. 156323, for 98 shares of common, issued June 18, 1923, stands either duly endorsed in blank by Joseph L. Hanley, trustee, or has powers of attorney executed by him attached. And I have found, and hold, the duly executed power of attorney of Joseph L. Hanley, trustee, dated November 16, 1917, and running to my late father, H. Chouteau Dyer, empowering him to effectuate all transfers of all stock held by him as trustee under the will of Ellen D. Raymond, and to cash all dividend checks thereof made payable to him as such trustee. It was under that power, undoubtedly, that father cashed all United Shoe Machinery dividend checks sent him over the years. On November 26, 1954, petitioner executed the following indemnity and saveharmless agreement to United Shoe and the Old Colony Trust Company: United Shoe Machinery Corporation and Old Colony Trust Company, 45 Milk Street, Boston, Massachusetts
Gentlemen: *226 You have been tendered for transfer 411 shares of common and 75 shares of preferred stock of United Shoe Machinery Corporation belonging to the trust under the will of our grandmother Ellen D. Raymond and represented by common stock certificate numbers 42717, 19472, 97437, 31673, 13626, 8731, 156323 and 208322 and preferred stock certificate number 7644. We guarantee that we as remaindermen of the trust under our grandmother's will are the sole persons entitled to the stock and that there are no tax or other liens outstanding against it. Furthermore we agree to indemnify you for, and save you harmless against, any loss, liability or expense of any nature which may arise or you may incur by reason of your making the transfers and issuing the stock pursuant to transfer documents executed by us. This document shall take effect as a sealed instrument binding on us jointly and severally and on our heirs, successors, and assigns and may be executed by the separate signatures of any one or more of us on a copy or copies hereof. [Signatures omitted.] Petitioner and his brother and three sisters were each entitled as remaindermen to one-fifth of the shares of the trust, or 82 1/5 shares *227 of United Shoe common stock. Petitioner purchased four-fifths of a share from his brother and sisters. After execution of the indemnity and save-harmless agreement on or about December 23, 1954, United Shoe issued 83 shares of stock to petitioner and 82 shares each to his brother and three sisters in return for the 411 shares of the Ellen D. Raymond stock. As of March 1, 1913, there were 223 shares of common stock of United Shoe outstanding in the name of the estate of Ellen D. Raymond. Petitioner derived his interest in 82 1/5 shares of the 83 shares of common stock of United Shoe sold in 1955 from his maternal grandmother, Ellen D. Raymond. His basis for purposes of computing gain on the sale thereof is one-fifth of the fair market value of the 223 shares which the estate of Ellen D. Raymond owned on March 1, 1913. This one-fifth is $2,218.85. Issue 3. Fair Market Value of Interstate Bakeries Corporation Stock On their income tax return for the year 1955, petitioners reported a long-term capital loss of $1,035.13 from sale of "50 shs Int Bak $1 par, plus accrued dividends," showing sale proceeds of $300, a basis of $1,271.50, and expenses of sale of $63.63. The Commissioner *228 determined that the fair market value of the petitioner's interest in Interstate Bakeries stock was $435, a reduction in basis of $836.50, and computed the long-term loss on the item to be $198.63. After his father's death on May 3, 1954, petitioner found among his father's effects stock Certificate CC-27, dated May 1, 1931, representing 100 shares of no par stock of Interstate Bakeries, a Delaware corporation organized in 1930. The certificate was issued in the name of August Tebelmann and was endorsed by Tebelmann in blank. Tebelmann's signature to the endorsement in blank was guaranteed by the Cass Bank and Trust Co. of St. Louis. Tebelmann was a client of petitioner's father. A journal of receipts maintained by petitioner's father showed the receipt of $750 from the Tebelmann Bakery in December, 1931. None of the records of Chouteau show how or why he acquired the 100 shares of no par stock of Interstate Bakeries. In 1937, the no par stock of Interstate Bakeries (1930 Delaware) became exchangeable share for share for $1 par stock of a new corporation with the same name, incorporated under the laws of Delaware in 1937. Tebelmann died in 1947. After his death his widow, Mary *229 Tebelmann, notified Interstate Bakeries (1937 Delaware) of his death, that she was administratrix of his estate, that Certificate CC-27 was part of the assets of the estate, and that such certificate had been lost. Upon receipt of her affidavit, and the furnishing of a lost instrument bond, Interstate Bakeries, on April 30, 1948, issued her a replacement Certificate, No. C-8841, for 100 shares of the $1 par stock. Mary included Certificate No. C-8841 in the amended inventory filed in her deceased husband's estate. On December 27, 1948, Interstate Bakeries commenced payment of dividends on its $1 par stock. On April 11, 1951, it declared and paid a 100 percent stock dividend on its $1 par stock and on April 9, 1954, it declared and paid a 25 percent stock dividend. On May 3, 1954, the date of petitioner's father's death, the $1 par stock was quoted on the New York Stock Exchange at 21 3/4 bid. On December 1, 1954, petitioner, as executor of his father's estate, presented the certificate of stock of the old corporation, No. CC-27, to the Continental Bank and Trust Company of Chicago, the transfer agent for the new Interstate Bakeries Corporation. The transfer agent stamped the certificate *230 "Void. Replaced April 30, 1948." Petitioner thereafter made demand of the new corporation for 250 shares of its $1 par stock, plus payment of $920 for dividends which petitioner claimed was due on the stock. This demand was refused. Petitioner purchased a one-fifth interest in the stock certificate from both his brother and one of his sisters for $200 each, or a total of $400 for their combined two-fifths interest. Suit was never filed against the surety or Interstate Bakeries. The stock certificate was sold to the surety company on August 30, 1955, for the sum of $1,500. The fair market value at the time of Chouteau's death of stock Certificate CC-27, representing 100 shares of stock of the old Interstate Bakeries Corporation, was $2,175, the value determined by the Commissioner in his deficiency notice. The value of petitioner's one-fifth interest therein at the time of the death of his father was $435. Opinion BLACK, Judge: There are three issues involved in this proceeding. We shall take them up and decide them in the order in which they have been stated. Issue 1 Petitioners owned a Siamese cat and it is their contention that while the cat was having its first fit it *231 turned over and broke an antique vase belonging to petitioners and that as a result they suffered a casualty loss of $100 which they took as a deduction on their joint income tax return for the year 1955. In their income tax return they described the loss as follows: "$100.00 antique case irrepairably broken by cat. Held not covered by insurance." Petitioners rely, in support of their claimed loss, upon section 165(c)(3) of the 1954 Code, printed in the margin. [1]
Manifestly, petitioners' loss was not from fire, storm, or shipwreck. They, of course, make no claim that it was. But was it a casualty loss at all? In construing the term "other casualty" the rule of ejusdem generis is applicable *232 and in order that a loss may be deductible as a casualty loss it must appear that the casualty was of a similar character to a fire, storm, or a shipwreck. Of course, it goes without saying that it does not have to be exactly the same. The breakage of ordinary household equipment such as china or glassware through negligence of handling or by a family pet is not a "casualty loss" under section 165(c)(3) in our opinion. Petitioners do not question the soundness of the foregoing statement as a general proposition. In their brief they state as follows: Petitioners admit that breakage of the vase, if occasioned by its ordinary handling by their servant, or by their cat, would not entitle them to a casualty loss deduction. Robert M. Diggs, et ux., T.C. Memo. 1959-99. But that was not the situation here. The breakage of the vase was not occasioned by the cat's ordinary perambulations on the top of the particular piece of furniture, but by its extraordinary behavior there in the course of having its first fit. We are not persuaded that the distinction which petitioners endeavor to draw in the foregoing quotation from their brief is a sound one and it is, therefore, not sustained. *233 Doubtless, petitioners' "kitty cat" was having its first fit as petitioner testified at the trial. We have no reason to doubt the truth of his testimony to that effect. We do not think, however, such fact would make the loss a "casualty loss" within the meaning of the applicable statute which has been quoted in the margin. On this first issue we hold in favor of respondent. Issue 2 This issue involves petitioner's basis for computing the gain on the sale of certain stock which he owned in the United Shoe Machinery Corporation. There is no dispute as to the amount of money which petitioner received in the sale. The only issue is as to the basis which should be used in computing petitioner's gain. There is, of course, no dispute as to the cost basis of the fractions of share which petitioner purchased from his brother and sisters so as to round out his number of shares owned to 83 shares. It is the contention of petitioner that he acquired 82 1/5 of his shares under the will of his father, Chouteau, who died on May 3, 1954. Therefore, he contends that his basis for gain or loss on the sale of his shares in 1955 was their fair market value on the date of the death of his father. *234 Under this theory he contends for a basis of 82 1/5 shares of $4,233. Respondent has determined that petitioner acquired the stock in question under the will of his grandmother, Ellen D. Raymond, who died in December 1903 and that petitioner's basis is the March 1, 1913, fair market value which he determined to be $2,057.59. The applicable statute is section 1014(a), (b)(1), 1954 Code, printed in the margin. [2]Section 1.1014-4(a)(2) of the Income Tax Regulations promulgated under the 1954 Code reads in part as follows: Under the law governing wills and the distribution of the property of decedents, all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent, even though the interest of the person taking the title was, at the date of death of the decedent, legal, equitable, vested, contingent, general, specific, residual, conditional, executory, or otherwise. Accordingly, there is a common acquisition date for all titles to property acquired from a decedent within the meaning of section 1014, and, for this reason, a common or uniform basis for all such interests. * * * If the bequest is to trustees in trust *235 to pay to A during his lifetime the income of the property bequeathed, and after his death to distribute such property to the survivors of a class, and upon A's death the property is distributed to the taxpayer as the sole survivor, the basis of such property, in the hands of the taxpayer, is its fair market value at the time when the decedent died. * * * *236 Similar provisions of prior regulations have been upheld and followed by the courts. Helvering v. Reynolds, 313 U.S. 428 (1941); Malcolm Clifton Davenport, 6 T.C. 62 (1946). Under the will of Ellen, petitioner's maternal grandmother, who died in December 1903, and the inventory of her estate filed in Probate Court, Middlesex County, Massachusetts, 90 shares of United Shoe common stock were included in the residue of the decedent's estate bequeathed in trust for the life of petitioner's mother, Ethel R. Dyer, remainder upon the death of Ethel to her issue. Petitioner, his brother, and three sisters were the only issue of Ethel, who died in 1910. All of the remaining shares of United Shoe common stock were issued either as a result of exercise of subscription rights prior to 1910 or as dividends on the outstanding stock. Accordingly, it seems clear that in the absence of unusual circumstances petitioner, his brother, and his sisters "acquired" their interest in the United Shoe common stock under the will of their grandmother, Ellen. But the fair market value of the stock at December 1903 is not its basis to petitioner. The fair market value of such stock *237 on March 1, 1913, is the basis. The total number of shares at that time was 223 and their total fair market value was $11,094.25; petitioner's one-fifth of this was $2,218.85. That would seem to be petitioner's basis under the applicable statute and regulations. Of course, it is true that these 223 shares subsequently increased to 411 shares by reason of certain stock dividends. It is likewise true that if the stock had been sold piecemeal, the cost of each share of stock would have to be fixed by the application of the formula for allocating the cost basis of the original shares between the original shares owned and the new shares acquired by the stock dividend. This problem does not have to be considered herein because all the shares owned were sold at one time. Therefore, it seems to us that inasmuch as the fair market value of the 223 shares of stock on March 1, 1913, was $11,094.25, one-fifth of that became and was the basis of the 82 1/5 shares of United Shoe common stock which petitioner acquired under the will of his grandmother and which he sold in 1955, no more, no less. We are not concerned here with the problem of allocating a basis to each particular share of stock. *238 Petitioner does not seem to question the foregoing rule of fixing basis but contends that in the instant case the basis was fixed at the date of the death of his father in 1954, because, as he contends, his mother Ethel Dyer had come into ownership of the stock prior to her death in 1910 and she, in turn, had given it to his father, H. Chouteau Dyer, and that his father had been the owner of the stock for many years and was the owner of it at the time of his death in 1954. We have endeavored to make full findings of fact with respect to this disputed issue. It is unnecessary to repeat them here. On the facts, we have sustained respondent that the basis of the stock is its fair market value March 1, 1913, and not at May 3, 1954, the date of the death of Chouteau. As we have already stated, respondent has determined petitioner's one-fifth of that value to be $2,057.59. Petitioner contends that respondent erred in his determination of the March 1, 1913, fair market value of the stock in question and that if the Court should hold against him on his contention that he acquired his stock under the will of his father, that nevertheless the respondent erred in his determination that the fair *239 market value of petitioner's stock on March 1, 1913, was $2,057.59. Petitioner contends that the facts show that the fair market value of petitioner's share of the stock on that date was $2,218.85. For reasons we have already stated, we think petitioner is correct in this contention. The latter figure of $2,218.85 should be used in a recomputation under Rule 50 instead of the $2,057.59 which respondent has used in his determination of the deficiency. Issue 3 There is no dispute as to the price which petitioner received in the sale of his one-fifth interest in the Interstate Bakeries Corporation stock. The dispute is as to the basis of cost which petitioner is entitled to use in computing his gain or loss on the sale of the stock. In his determination of the deficiency the Commissioner has determined that petitioner's basis "in Interstate Baking Corporation no par common stock was $435.00 in lieu of $1,271.50." Our findings of fact give full details with reference to Chouteau's ownership of this Interstate Bakeries common stock. Respondent concedes that at the time of his death Chouteau was the owner of Certificate CC-27, dated May 1, 1931, representing 100 shares of no par stock *240 of Interstate Bakeries Corporation, a Delaware corporation, organized in 1930. Respondent does not concede that Chouteau was the owner at the time of his death of 250 shares of the $1 par value stock issued by the new Interstate Bakeries Corporation upon its succeeding in 1937 the old Interstate Bakeries Corporation. Respondent points out that when petitioner, as executor of his father's estate, undertook to exchange Certificate CC-27, 100 shares in the old corporation, the transfer agent of the new Interstate Bakeries Corporation refused to make the exchange and returned the certificate to petitioner marked "Void. Replaced April 30, 1948." Therefore, it is plain that if petitioner had ever succeeded in making the exchange it would have been after litigation. Petitioner cites numerous cases which he says would have supported his right of the exchange. Respondent cites cases which he contends would have prevented petitioner's securing the exchange. We find it unnecessary to discuss these cases. The issue we have here to decide is not whether the petitioner could have procured the exchange after litigation - that is not the issue at all. The issue is what was the fair market value *241 of Certificate CC-27 dated May 1, 1931, representing 100 shares of no par stock of Interstate Bakeries (the old corporation) at the date of the death of petitioner's father. The Commissioner has determined the fair market value of this certificate of stock was $2,175 and that petitioner's portion was $435. There is nothing in the record which would justify us in disturbing respondent's determination. We sustain respondent as to Issue 3. Decision will be entered under Rule 50. Footnotes
1. SEC. 165. LOSSES. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) Losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return.↩
2. SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections. (b) Property Acquired From the Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent: (1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;↩