Paul Porganan v. Commissioner.
Porganan v. Commissioner
Docket No. 299-67.
United States Tax Court
T.C. Memo 1969-166; 1969 Tax Ct. Memo LEXIS 131; 28 T.C.M. (CCH) 829; T.C.M. (RIA) 69166; August 13, 1969, Filed Robert E. Tout, 999 Bel Air Bldg., Stockton, Calif., for the petitioner. Leo A. McLaughlin and Richard D. Worsley, for the respondent. 830 FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined the following deficiencies and addition to tax with respect to petitioner's income taxes for the taxable years 1960, 1961, 1963, and 1964. Addition to tax, sec. 6651(a), I.R.C. 1954
Year
Deficiency
I.R.C. 1954
1960
$10,506.64
1961
45,059.03
$23,863.61
1963
None
1964
None The petitioner contests the deficiencies and the penalty asserted. On his Federal income tax return for the calendar year 1963, petitioner deducted $18,656.21 as his distributive share of partnership losses. On his 1964 Federal income tax return, petitioner deducted losses incurred, in the sum of $51,615.71. Respondent has disallowed $17,795.88 and $51,215.71 of such deductions for those years, respectively. As a result of these disallowances, respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1960 and 1961. *133 The deficiencies resulted from adjustments made to operating losses incurred in 1963 and 1964, which adjusted losses were then carried back to 1960 and 1961. The issues for decision are: (1) Whether certain office expenses were deductible by petitioner for 1963 and 1964, respectively; and (2) whether petitioner is liable for an addition to tax under section 6651(a) of the Internal Revenue Code of 1954 for the taxable year 1961. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Paul Porganan (hereinafter referred to as petitioner or Porganan) was a resident of Lathrop, California, at the time of the filing of his petition in this case. For all years at issue, petitioner filed his individual Federal income tax returns on the basis of the calendar year with the district director of internal revenuc, San Francisco, California. Petitioner is a native of the Philippine Islands. In 1931, at the age of 21, petitioner came to the United States and began work as a farm laborer, employed by others. Soon after his arrival to the United States, petitioner *134 began to engage in personal farming ventures which proved to be successful. The volume of his farming business increased steadily with the expansion of his farmland holdings. Eventually, petitioner diversified his business enterprises to include, in addition to farming, purchasing, processing, and distributing farm produce. Prior to 1961, petitioner operated his business as a sole proprietorship. In 1961, petitioner transferred to his solely-owned corporation, Paul's Produce, Inc. (hereinafter referred to as Produce), the processing and distributing aspects of his sole proprietorship. In 1961, petitioner also entered into a farming partnership, P.G.A. Farms, with two unrelated individuals, Sam Guillermo and Simplicio Aurelio. Petitioner owned a 63 percent interest in this partnership. P.G.A. Farms was dissolved in 1964. Prior to dissolution, P.G.A. Farms sold its entire crop to Produce. After the necessary processing and packaging, Produce marketed the carrots through brokers. The 1963 Federal income tax return for P.G.A. Farms disclosed the following revenues, operating expenses, and net loss: REVENUES:
Carrots
$ 77,918.96
Other 23,323.05
Total Revenues
$101,242.01
*135 OPERATING EXPENSES:
Seed purchases
$ 2,743.99
Farm labor
37,328.98
Outside labor
7,604.36
Fertilizers & chemicals
38,519.21
Insurance
1,483.35
Interest expense
20.14
Utilities
2,132.05
Supplies
3,879.87
Land rentals
19,967.72
Equipment repairs
6,057.13
Gas & oil
4,295.27
Payroll taxes
811.00
Depreciation (Schedule)
5,293.98
Office expense
3,600.00
Legal & auditing
900.00
Miscellaneous 20.00
02,00,14
Total Operating Expenses 134,657.05
NET LOSS
($ 33,415.04)
Petitioner's distributive share of the net loss reported on the 1963 partnership return of P.G.A. Farms was $18,656.21. In his individual income tax return for 1963, petitioner claimed as a deduction his entire distributive share of the losses. Respondent disallowed as a deduction a portion of petitioner's share of the 831 partnership's 1963 net loss, amounting to a disallowance of $17,795.88. Included in such disallowance was petitioner's share of the $3,600 office expenses. After dissolution of P.G.A. Farms in 1964, petitioner continued to raise carrots as a sole proprietor. All of the carrots raised were sold to Produce. On his Federal *136 income tax return for 1964, petitioner reported the following income, expenses, and loss from farming: INCOME FROM FARMING:
Carrot sales
$24,600.77
EXPENSES:
Seed purchases
$ 2,646.29
Farm labor
28,722.89
Outside labor
3,260.07
Fertilizers and fumi- gants
9,477.50
Utilities
2,794.23
Insurance
750.99
Office rent
900.00
Land rents
15,062.30
Equipment repairs
3,623.54
Gas and lubricants
2,949.81
Payroll taxes
1,156.09
Miscellaneous
81.51
Depreciation - Below
4,391.26
Legal and accounting 400.00
Total expenses 76,216.48
LOSS FROM FARMING
($51,615.71)
Of the net loss reported by petitioner on his individual income tax return for 1964, respondent disallowed $51,215.17. This disallowance included the $900 office rent expense for 1964. Petitioner had little formal education. After his completion of the third grade of school in the Philippines, he had no further schooling. His knowledge and understanding of accounting and tax matters was minimal outside of a general awareness of his obligation to file tax returns and pay taxes. To these ends, petitioner employed Ernest Lopez as his bookkeeper and N.J. *137 Allen, a Certified Public Accountant, as his accountant. Petitioner first engaged Allen in 1956 at the instance of Lopez. Lopez had been employed by petitioner earlier that year as his bookkeeper. Allen's principal duties as petitioner's accountant consisted of auditing petitioner's books and preparing financial statements and income tax returns for petitioner. From 1956 through 1960, Allen prepared petitioner's tax returns. During this period, filing of the returns was handled by Allen or Lopez. Sometimes Allen would bring the return personally to petitioner for signature and then mail it. At other times he would forward it to Lopez who, after having it signed by petitioner, would transmit it to the district director. For the taxable year 1961, Porganan's Federal income tax return was not prepared or filed on or before April 15, 1962. Between late April and May 2, 1962, Allen prepared a tax return for petitioner and forwarded it to petitioner's office by letter dated May 2, 1962, to the attention of Lopez, for signature and filing. Some of the information set forth in the return was estimated. This return was filed with the district director on or before May 15, 1962. Allen *138 failed to have the return ready by its April 15 due date because of his heavy seasonal workload and the general condition of petitioner's books. In May 1962, Allen was discharged from petitioner's employ because of his inability to handle the work required of him. He was replaced by Clifton C.Hite, also a Certified Public Accountant in the State of California. An amended return for 1961 was prepared by Hite and filed by petitioner on February 25, 1963. Opinion The issues presented for decision are: (1) Whether certain office expenses incurred in connection with the farming and sale of produce to petitioner's wholly-owned corporation were deductible for 1963 and 1964 under section 267 of the Internal Revenue Code of 1954, [1] and (2) whether petitioner is liable 832 for an addition to tax under section 6651(a)[2] for the taxble year 1961. *139 In 1963, the losses in question arose from sales by P.G.A. Farms, a partnership in which petitioner owned a 63 percent interest, to Produce, a corporation of which petitioner is the sole shareholder. Petitioner sought to deduct his distributive share of such losses. In 1964, the said sales occurred between petitioner and Produce. In each case, the sales to Produce involved the seller's entire crop for the year. Petitioner in his original brief conceded the applicability of section 267 to the abovedescribed transactions. Petitioner contests, however, the extent of respondent's disallowance. For the taxable year 1963, respondent included in his disallowance of losses, petitioner's share of the $3,600 office expenses incurred by P.G.A. Farms. Similarly, for 1964, the $900 office expense incurred by petitioner was disallowed. Petitioner urges the exclusion of such "administrative expenses" from his computation of the loss disallowance under section 267. Petitioner cites no authority for this proposition. We find no statutory or judicial support for such proposition. Section 267(a)(1) disallows "losses from sales or exchanges of property" between certain related persons enumerated *140 in subsection (b) thereof. The term "loss" is described in section 1001(a) to be the excess of the adjusted basis over the amount realized. Section 1012 provides, with certain exceptions not pertinent hereto, that the "basis of property shall be the cost of such property." [Emphasis added] Section 267(a) therefore necessitates a computation of petitioner's basis in the produce sold during the taxable year to P.G.A. Farms. Estate of Edwin H. Johnson 42 T.C. 441 (1964), affd. 355 F. 2d 931 (C.A. 6, 1965). The question which we must decide is whether office expenses enter into the computation of petitioner's basis of produce farmed and sold within a single taxable year, for the purposes of section 267. Petitioner asserts that the cost of operating his business office would be characterized as "administrative" or "indirect costs" of farming. As such, petitioner argues that they should not be included in the computation of losses but rather be allowed to the petitioner as an expense in the year incurred. We can see no justification for such a conclusion. Office expenses, albeit indirect expenses, are nevertheless "costs" and are to enter into the computation *141 of basis for the purposes of determining losses under section 267. They are expenses necessary to produce the salable article. See Estate of Edwin H. Johnson, supra, at 444, involving a manufacturing operation, wherein we said that cost basis includes all items of expense necessary to the production of the salable article. Also, we find petitioner's argument insofar as it relates to tax accounting practices, inconsistent with Income Tax Regs. section 1.471-3(c)(3). [3] See Frank G. Wikstrom & Sons, Inc., 20 T.C. 359 at 361-362 (1953). This regulation defines cost to include indirect expenses for purposes of the cost method of accounting for inventories. Moreover, we think that petitioner's interpretation *142 of section 267(a) would partially defeat its purpose. The predecessor of section 267 was enacted to discourage the practice of creating losses through transactions between members of a family and close corporations as a means of avoiding income tax. [4] Congress has, therefore, 833 disallowed the losses arising from transactions between related parties. We think that petitioner's office costs were a significant part of such losses. We refuse to open the door to a partial avoidance of these preventive measures taken by Congress by making the artificial distinctions urged upon us by the petitioner. We are therefore led to conclude that petitioner's office costs are to enter into a computation of his basis in the produce sold. As part of his losses incurred in a transaction falling within section 267, petitioner's office costs were properly disallowed. We therefore sustain respondent's disallowance of losses for the years 1963 and 1964. In addition to deficiencies for 1960 and 1961, respondent asserted, pursuant to section 6651(a), a delinquency penalty for the year 1961 of 25 percent, *143 amounting to $23,863.61. Respondent's primary position is that petitioner failed to file any return for 1961 prior to February 25, 1963. Alternatively, respondent claims that if a return form was filed sometime in April or May 1962, as claimed by petitioner, said form does not qualify as a federal income tax return for the purposes of the delinquency penalty. In either case, respondent would have us find that no reasonable cause existed for petitioner's delay. While we recognize that petitioner bears the burden of proof on the issue of timely filing, [5] and noting that the evidence as to this issue is somewhat clouded, we conclude on the basis of the entire record, that a return form for the year 1961 was filed by petitioner sometime in May of 1962. In so holding, we take account of petitioner's customary practices of prior years with regard to the filing of returns. Returns for such prior years, forwarded by Allen to petitioner's office for signature and filing, were in fact signed by petitioner, and mailed by Lopez. We believe that there was no significant departure from petitioner's customary filing practices for the taxable year in question. *144 We now turn to the question as to whether petitioner has carried his burden of proving that his failure to file an income tax return timely for the year 1961 was due to reasonable cause. After a careful review of the entire record, we hold that petitioner has failed to show reasonable cause for his failure to file any return prior to May 1962. The record does not disclose any efforts by petitioner to investigate Allen's progress in the preparation of his return as the April 15, 1962, due date approached. There is no evidence in the record of any communication between petitioner and Allen on or before April 15 regarding Allen's failure to prepare the return. We think that even in the case of a person with the limited comprehension of petitioner concerning tax matters the burden of filing returns cannot be avoided by placing responsibility upon an agent. Malcolm Clifton Davenport, 6 T.C. 62 (1946), acq. 1946-1 C.B. 2. We conclude that petitioner's failure to file on or before April 15, 1962, was not due to reasonable cause and that the section 6651 penalty was properly asserted against him for his failure to file prior to his May filing. Other considerations *145 obtain, however, with regard to the penalty addition for the period following petitioner's May filing. We have already found that Porganan filed a return (Form 1040) for the taxable year 1961 on or before May 15, 1962. This return was prepared by a C.P.A. but was not based upon a detailed audit of petitioner's books. Some of the information set forth therein was estimated. Respondent contends that such return is incomplete and hence invalid. We find it unnecessary for the purpose of rendering our decision in this case to determine whether the return constituted a complete return which would satisfy the filing requirements and avoid the imposition of a penalty. Even if such return was not valid, we conclude that any failure on petitioner's part to file a valid return after May 1962 was due to reasonable cause. Petitioner, though manifesting an aptitude as a farmer, was notably uneducated and particularly ignorant with respect to the bookkeeping and accounting aspects of his business. He had little, if any, comprehension of the simplest tax matters. Recognizing his obligation as a taxpayer to the United States, he enlisted the expert assistance of Allen, a Certified Public Accountant, *146 and Lopez to maintain financial 834 records and have proper income tax returns prepared. Petitioner had every reason to believe that Allen was qualified to prepare his tax returns. We think that, under the circumstances, and considering particularly petitioner's educational background, petitioner's reliance upon a "competent tax expert" as to the validity of his return was justified and that he had done all that ordinary business care and prudence can reasonably demand. [6] This Court has recognized that reliance on the advice of counsel or of expert accountants sought and received in good faith may constitute "reasonable cause" for failing to file a tax return. Safety Tube Corporation, 8 T.C. 757 (1947), affd. 168 F. 2d 787 (C.A. 6, 1948); Brooklyn & Richmond Ferry Co., 9 T.C. 865 (1947), affd. 171 F. 2d 616 (C.A. 2, 1948), certiorari denied 336 U.S. 968 (1949); Estate of H.B. Hundley, 52 T.C. 495 (June 24, 1969).
Since petitioner was unable to demonstrate that his failure to file a return on or before its due date, *147 April 15, 1962, was due to reasonable cause, a 5 percent addition to his tax was properly asserted against him. However, we have also held that such failure to file without reasonable cause did not continue for more than one month inasmuch as petitioner has shown reasonable cause for his failure to file a valid return or or after May 15, 1962. Accordingly, respondent's addition to petitioner's income tax for four additional months at the rate of 5 percent per month was in error. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) Deductions Disallowed. - No deduction shall be allowed - (1) Losses. - In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b). * * * (b) Relationships. - The persons referred to in subsection (a) are: * * * (2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such indiivdual: ↩
2. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
3. Sec. 1.471-3 Inventories at Cost. Cost means * * * (c) In the case of merchandise produced by the taxpayer since the beginning of the taxable year, * * * (3) indirect expenses incident to and necessary for the production of the particular article, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit.↩
4. See H. Rept. No. 704, 73d Cong., 2d Sess., p. 23 (1934), 1939-1 (Part 2) C.B. 554.↩
5. See Genevra Heman, 32 T.C. 479 (1959), affd. 283 F. 2d 227↩ (C.A. 8, 1960).
6. See Income Tax Regs., sec. 301.6651↩-(1)(a)(3).