# United States Tax Court

T.C. Memo. 2023-121

JOHN PETER ZAIMES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 16362-19L.                    Filed September 26, 2023.

———————

John Peter Zaimes, pro se.

*Andrea M. Faldermeyer* and *Christine A. Fukushima*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, *Judge*: This case is an appeal of the determination of the Internal Revenue Service (IRS) Office of Appeals[1] to sustain the filing of a notice of federal tax lien. We have jurisdiction under section 6330(d)(1).[2] Petitioner, John Peter Zaimes, during the collection-due-process (CDP) hearing at the Office of Appeals, disputed his underlying liability for a section 6651(a)(1) addition to tax of $24,213.37 and a section 6651(a)(2) addition to tax of $12,984.92. Both additions are related to the 2015 tax year. We sustain the IRS's determination in full.

———

[1] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the "Office of Appeals."

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code of 1986, Title 26 U.S.C., in effect at all relevant times, and regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times.

[*2]                    FINDINGS OF FACT

Zaimes resided in California when he filed the Petition in this case.

On February 1, 2016, Zaimes made an estimated tax payment of $40,000 toward his 2015 income tax liability.

On April 15, 2016, Zaimes timely filed an automatic extension of time to file his 2015 federal tax return to October 17, 2016. He submitted a $38,000 payment with his extension.

Andrea H. Izykowski, a certified public accountant, prepared the 2015 return that we conclude Zaimes mailed to the IRS by regular mail[3] on October 17, 2016, and a second 2015 return that he e-filed with the IRS on November 13, 2017. On October 17, 2016, Izykowski suggested to Zaimes that he send his 2015 return to the IRS by regular mail.

At some time before 6:24 p.m. Pacific Daylight Time (PDT) on October 17, 2016, Zaimes received his 2015 return from Izykowski. On the night of October 17, 2016, he (1) signed the return and (2) placed the return and a $58,145 check in a manilla envelope. The envelope had a privately metered postmark.[4]

Zaimes made a photocopy of the first two pages of the 2015 return that he mailed. These two pages were admitted as evidence. He signed the second page of the return. Next to his signature was the date "October 17, 2015" in the same handwriting as his signature. Zaimes testified that he signed the return on October 17, 2016. He ascribed the incorrect "October 17, 2015" date written next to his signature to a mistake on his part. Izykowski's name appears in the "Paid Preparer Use Only" line on the second page of the return. Next to Izykowski's name are two dates: April 18, 2016, and October 17, 2016. The two dates

---

[3] For reasons discussed *infra* OPINION, Part I.A.1, taxpayers who mail their returns by certified or registered mail receive more statutory and regulatory protections than taxpayers who mail their returns by regular mail. *See* § 7502(c); Treas. Reg. § 301.7502-1(c), (e)(2)(i). When referring to "regular mail" in this Opinion, we are referring to all types of mailing other than by certified mail, by registered mail, or by a private delivery service (PDS).

[4] The U.S. Postal Service (USPS) does not ordinarily postmark envelopes bearing a postmark made by a private postage meter. *See Herrera v. Commissioner*, T.C. Memo. 2012-308, at *23, *aff'd per curiam*, 544 F. App'x 592 (5th Cir. 2013). There is no reason to think that Zaimes's mailed return also bore a USPS postmark. We thus conclude that his return did not have a USPS postmark.

[*3] next to Izykowski's name have different typefaces. The April 18, 2016, date appears to be computer generated, while the October 17, 2016, date appears to have been made by stamp. Zaimes testified that Izykowski finished entering the information on his return on October 17, 2016, and sent the return to him on that day. We find Zaimes's testimony in regard to these pages to be credible (i.e., that Zaimes wrote the date October 17, 2015, next to his signature instead of October 17, 2016, by accident and that Izykowski finished preparing the return on October 17, 2016). We therefore conclude that Izykowski finished entering the information on the return on October 17, 2016, and not April 18, 2016. We further conclude that these two pages were copies of the first two pages of the return Zaimes mailed on October 17, 2016, and we will rely on information on the two pages when discussing Zaimes's mailed return below.

Zaimes's mailed return reported that he owed (1) a total tax liability of $193,067 and (2) an estimated-tax penalty of $3,078. The return also reported his $40,000 payment on February 1, 2016, and his $38,000 payment on April 15, 2016. Accounting for these payments, the mailed return showed an unpaid balance of $118,145.

The $58,145 check Zaimes enclosed with his mailed return was intended to partially pay his 2015 income tax liability. Zaimes kept a check register for the checking account from which he wrote the $58,145 check. The check register shows he wrote a $58,145 check on October 17, 2016.

At 6:24 p.m. PDT, October 17, 2016, Margaret Masier (a person who worked with Izykowski) sent an email to "Julie" (another person who worked with Izykowski), stating that "[Zaimes] is going to send [the] hard copy of his return to the IRS tonight." The email was referring to Zaimes's 2015 return that was eventually mailed, not the e-filed return he later submitted to the IRS in November 2017. The email instructed Julie to e-file Zaimes's New York and California state tax returns. As shown by the "To:" line of the email, the email was sent to Zaimes's and Julie's email addresses. The body of the email named as addressees both Zaimes and Julie. Zaimes's mailed return was not attached to the email. It must have been transmitted from Izykowski to Zaimes by another communication.

At some point after 6:24 p.m. PDT on October 17, 2016, Zaimes placed the manilla envelope containing his mailed return and the $58,145 check in a drive-up USPS mailbox outside of a U.S. post office

[*4] near Los Angeles International Airport. Zaimes was on his way to the airport on the night of October 17, 2016, to board a flight to New York.

The IRS's records do not reflect that it received either the mailed return or the $58,145 check. Zaimes contends that he placed the return in the mail and that the USPS did not deliver the return to the IRS. The IRS contends that it did not receive the return because Zaimes did not mail it. We believe Zaimes's testimony that he placed the return in the mail, and we find that the USPS did not deliver the return to the IRS.

At some time between October 17, 2016, and November 13, 2017, (1) Zaimes learned that the IRS had not cashed the $58,145 check that he had mailed, which suggested to Zaimes that the IRS had not received the mailed return, and (2) Izykowski advised Zaimes to e-file his 2015 return. We need not determine the exact date that Zaimes became aware that his check had not been cashed because it does not affect our resolution of this case. *See infra* OPINION, Part II.

On November 13, 2017, Zaimes electronically filed his 2015 return. Zaimes's e-filed 2015 return reported (1) a total income tax liability of $185,615[5] and (2) an estimated-tax penalty of $3,078. After taking into account his prior payments on February 1, 2016, and April 15, 2016, totaling $78,000, the e-filed return reported an unpaid balance of $110,693.[6] The parties do not dispute that $110,693 was the correct amount of Zaimes's unpaid (1) tax liability and (2) estimated-tax penalty. Zaimes did not submit payment to the IRS when he electronically filed his return.

On December 4, 2017, the IRS processed Zaimes's e-filed return and assessed the following: (1) $185,615, the amount shown on Zaimes's e-filed return; (2) interest of $8,405.31; (3) a $24,213.37 section 6651(a)(1) addition to tax for failing to timely file his return; (4) a

---

[5] The total tax liability reported on Zaimes's e-filed return ($185,615) is $7,452 less than the total tax liability reported on his mailed return ($193,067). This was because Zaimes reported a $7,452 liability on line 61 of his mailed return for "[h]ealth care: individual responsibility" that he did not report on his e-filed return. Whether Zaimes should have reported this $7,452 liability on his e-filed return is not at issue in this case because the parties do not dispute that the e-filed return showed the correct tax liability.

[6] On his return e-filed on November 13, 2017, the amount of tax Zaimes reported that he had paid did not include his mailed check for $58,145 from October 17, 2016.

[*5] $10,761.50 section 6651(a)(2) addition to tax for failing to timely pay the tax shown on the return; and (5) a $3,078 section 6654 estimated-tax penalty.

On that same day, December 4, 2017, the IRS sent Zaimes a "Notice of Tax Due and Demand for Payment" stating that he owed the following amounts for 2015:

| | | | Additions to Tax/Penalties | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Interest | § 6651(a)(1) | § 6651(a)(2) | § 6654 | Total |
| 2015 | $107,615.00 | $8,405.31 | $24,213.37 | $10,761.50 | $3,078.00 | $154,073.18 |

The $107,615 "deficiency" was computed as the $185,615 of tax reported and assessed for 2015 minus $78,000 for payments made (consisting of Zaimes's $40,000 payment on February 1, 2016, and his $38,000 payment on April 15, 2016).

On March 15, 2018, Zaimes made a $100,000 payment towards his 2015 tax liability. He has made no subsequent payments.

On September 25, 2018, the IRS sent Zaimes a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320" explaining that it had filed a notice of federal tax lien with respect to his outstanding 2015 tax liability. The notice showed an unpaid balance of $54,073.18, which equals the $154,073.18 total unpaid balance stated in the December 4, 2017, notice minus the $100,000 payment that Zaimes made on March 15, 2018. The notice informed Zaimes that he could seek a CDP hearing.

On October 22, 2018, the IRS assessed a late-payment addition to tax under section 6651(a)(2) for 2015 of $2,223.42. Combined with the IRS's previous assessment under section 6651(a)(2) of $10,761.50, this increased Zaimes's assessed liability for the section 6651(a)(2) addition to tax to $12,984.92.

On October 30, 2018, Zaimes timely mailed a Form 12153, "Request for a Collection Due Process or Equivalent Hearing," which the IRS received on November 5, 2018. Zaimes requested a CDP hearing with respect to the notice of federal tax lien filing for tax year 2015 and checked the box requesting the collection alternative of an offer-in-compromise. In the section titled "Other," Zaimes wrote "I do not believe

[*6] I should be responsible for penalties. I have documentation that I filed on time."

Zaimes's case was assigned to Settlement Officer Sharma (SO Sharma). On May 30, 2019, SO Sharma held the CDP hearing with Zaimes. Zaimes took the position that he was not liable for the late-filing and late-payment additions to tax but did not contest that he was liable for the tax itself or for the section 6654 estimated-tax penalty. He asserted that the IRS should abate the late-filing and late-payment additions to tax because, he alleged, he had timely filed his 2015 return and had timely paid a portion of his 2015 tax liability by mailing the $58,145 check on October 17, 2016. During the hearing Zaimes did not request any collection alternative or provide financial information to support consideration of such an alternative.

On July 31, 2019, SO Sharma sustained the filing of the notice of federal tax lien and issued Zaimes a "Notice of Determination Concerning Collection Actions Under Section 6320 and/or 6330." She determined that the IRS should not abate Zaimes's 2015 late-filing and late-payment additions to tax because Zaimes did not establish that he had timely filed his return or timely paid his 2015 tax liability. She also determined that Zaimes did not qualify for the IRS's "first-time abatement" program because the IRS had assessed late-filing and late-payment additions to tax against him for the 2012, 2013, and 2014 taxable years.[7]

On September 6, 2019, Zaimes timely filed the Petition in this case. He has not raised any issues aside from his liability for the late-filing and late-payment additions to tax for 2015.

OPINION

When the IRS assesses tax and demands payment, section 6321 automatically imposes a tax lien on the taxpayer's property or property rights. The lien is treated as arising from the time of the assessment. § 6322. To perfect this lien, the IRS must file a notice of federal tax lien in the county where the taxpayer's property is situated. § 6323(a), (f). Section 6320 requires the IRS to send notice to the taxpayer that it has

---

[7] At trial the IRS submitted transcripts of Zaimes's 2010 through 2014 Forms 1040, "U.S. Individual Income Tax Return," retrieved from the IRS's Transcript Delivery System. The transcripts show that the IRS received tax returns from Zaimes for all five years after the filing deadlines. In addition, the transcripts show that Zaimes failed to timely pay the tax owed for each of the five years.

**[\*7]** filed the notice of federal tax lien. § 6320(a)(1) and (2). This notice must also inform the taxpayer of the taxpayer's right to seek a CDP hearing. § 6320(a)(3)(B).

At a CDP hearing the taxpayer may challenge the existence or amount of the underlying liability (including the existence or amount of any penalties or additions to tax for which the notice of lien was filed) but may do so only if the taxpayer had not previously received a notice of deficiency from the IRS regarding the underlying liability or otherwise had no prior opportunity to challenge the liability. *See* § 6330(c)(2)(B); *Hoyle v. Commissioner*, 131 T.C. 197, 199 (2008), *supplemented by* 136 T.C. 463 (2011); *see also Dykstra v. Commissioner*, T.C. Memo. 2017-156, at \*16 ("A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the [IRS] seeks to collect."). Before Zaimes's CDP hearing the IRS had not sent a notice of deficiency to Zaimes, and he had no prior opportunity to challenge his alleged liability. Thus, Zaimes could properly dispute his alleged liability at the CDP hearing.

When the existence or the amount of the underlying liability is properly at issue, the Court will review the Office of Appeals' determinations de novo. *See Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). The scope of review as to the existence or amount of the underlying liability is also de novo. *See Jordan v. Commissioner*, 134 T.C. 1, 8–9 (2010), *supplemented by* T.C. Memo. 2011-243. Because the scope of review is de novo, both of the parties may introduce evidence that was not considered by the Office of Appeals. *See id.*; *see also Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997).

I.   *Zaimes is liable for the section 6651(a)(1) addition to tax for failing to timely file his 2015 return.*

We first address whether Zaimes is liable for the addition to tax under section 6651(a)(1) for failing to timely file his return. Section 6651(a)(1) provides:

> In case of failure . . . to file any return . . . on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with

**[*8]** an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . .

The amount of the addition to tax is therefore equal to the following percentages of tax shown on the return:

| Filing Date | Percentage |
| --- | --- |
| From one day after deadline until one month after deadline | 5% |
| From one month, one day after deadline until two months after deadline | 10% |
| From two months, one day after deadline until three months after deadline | 15% |
| From three months, one day after deadline until four months after deadline | 20% |
| Four months, one day after deadline or later | 25% |

Section 6651(a)(1) does not specifically address whether reasonable cause for the taxpayer's failure to file by the start of an additional month can excuse the 5% incremental addition to tax for the taxpayer's failure to file during that month (or fraction thereof). For example, could Zaimes's attempt to file his 2015 return on October 17, 2016, serve as reasonable cause for his failure to file his return on November 15, 2016, so as to absolve him of the 5% incremental addition to tax for failing to file the return for the "additional month" of November 15 to December 15, 2016? Under two regulatory provisions related to section 6651(a)(1), reasonable cause for a taxpayer's failure to file by the start of an additional month does not excuse the taxpayer from the 5% incremental addition to tax.[8] We thus conclude that any

---

[8] First, Treasury Regulation § 301.6651-1(a)(1) provides:

In case of failure to file a return . . . on or before the date prescribed for filing (determined with regard to any extension of time for such filing), there shall be added to the tax required to be shown on the return the amount specified below unless the failure to file the return within the prescribed time is shown to the satisfaction of the district director or the director of the service center to be due to reasonable cause and not to willful neglect. The amount to be added to the tax is 5 percent thereof if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which the failure continues, but not to exceed 25 percent in the aggregate.

**[*9]** reason for the continuing failure to file that arises after the filing deadline does not excuse the taxpayer from paying the addition to tax for any month in which the return is not timely filed.[9]

---

Second, Treasury Regulation § 301.6651-1(c)(1) provides: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause."

[9] The same conclusion was reached in *Oosterwijk v. United States*, No. CCB-21-1151, 2022 WL 255348 (D. Md. Jan. 27, 2022). In that case the taxpayers did not timely file their return by the April 17, 2018, deadline after their accountant failed to timely request an extension for the time to file. *Id*. at *1. After discovering the extension request had not been sent, the accountant advised the taxpayers on April 30, 2018, to file an extension request because "if they filed the six-month Extension Request at that moment, they would have until October 15, 2018, to file their tax return, and the penalties for late filing would halt." *Id*. The taxpayers followed their accountant's advice and filed the extension request, "incorrectly believ[ing] that by . . . submitting the Extension Request . . . (during the first month of lateness), they would halt the accrual of any late filing penalties until after October [15,] 2018." *Id*. at *1–2. They filed their return on June 29, 2018. *Id*. at *1. After receiving the return, the IRS assessed the taxpayers the addition to tax under section 6651(a)(1) for three months. *Oosterwijk*, 2022 WL 255348, at *2. The taxpayers argued that they should be excused from the addition to tax for the months beginning on May 15, 2018, and June 15, 2018, because, they claimed, their accountant's advice that penalties would halt after they filed an extension request on April 30, 2018, was reasonable cause for their failure to file by the first day of those respective two months. *Id*. at *7. The District Court rejected this argument and concluded that taxpayers can rely only on reasonable cause that existed at the filing deadline. *Id*. at *9.

We admittedly reached a different conclusion in *Porganan v. Commissioner*, T.C. Memo. 1969-166, 28 T.C.M. (CCH) 829. In that case the taxpayer's accountant failed to prepare a return in time for it to be filed by the April 15, 1962, filing deadline. *Id*. at 831. On May 15, 1962, the taxpayer filed a return that the accountant had completed based in part on estimates of the reported amounts. *Id*. On February 25, 1963, the taxpayer filed an amended return. *Id*. The IRS argued that the maximum addition to tax applied because (1) the taxpayer did not have reasonable cause for failing to timely file his return, (2) the return filed on May 15, 1962, was not a valid return, and (3) a valid return was not filed until February 25, 1963. *Id*. at 833. The Court held that the taxpayer did not have reasonable cause for failing to timely file for the month beginning on April 15, 1962. *Id*. However, the Court further held that the taxpayer's filing of a return on May 15, 1962, was reasonable cause for the continuing failure to timely file as of May 15, 1962, even if the return filed on that day was invalid. *Id*. The Court thus held that the taxpayer was excused from the addition to tax for all months after the first month in which the return was late. *Id*. at 834. Implicit in the court's reasoning is that reasonable cause for the taxpayer's failure to file by the start of additional months can excuse the incremental additions to tax during those months even when the taxpayer did not have reasonable cause at the filing deadline. *Porganan* is a memorandum opinion. It is not a binding precedent of this Court. *Huffman v. Commissioner*, 126 T.C. 322, 350 (2006) (citing *Dunaway v. Commissioner*, 124 T.C.

**[\*10]** The computation of the addition to tax under section 6651(a)(1) must take into account section 6651(b)(1) and (c)(1). Section 6651(b)(1) provides that "[f]or purposes of . . . [section 6651(a)(1)], the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return." Section 6651(c)(1) provides that the amount of the addition to tax under section 6651(a)(2) for the failure to timely pay the amount shown as tax on the return reduces the addition to tax under section 6651(a)(1) for any month in which both additions to tax apply.

Zaimes gives two arguments for why he is not liable for the section 6651(a)(1) addition to tax. First, Zaimes argues that he did timely file his return. Second, Zaimes contends that even if he did not timely file his return, he had reasonable cause for his failure to do so. Our analysis will thus proceed in two parts. First, we will address whether Zaimes timely filed his 2015 return. We conclude that he did not. *See infra* OPINION, Part I.A. Second, we will address whether Zaimes had reasonable cause for failing to timely file his return. We conclude that he did not.[10] *See infra* OPINION, Part I.B. Zaimes has the burden of persuasion on these issues.[11]

---

80, 87 (2005)), *aff'd*, 518 F.3d 357 (6th Cir. 2008). The Court in *Porganan* did not discuss Treasury Regulation § 301.6651-1. Therefore, we find the conclusion in *Porganan* unpersuasive.

[10] The addition to tax for failing to file a timely return is not imposed if "it is shown that such failure is due to reasonable cause and not due to willful neglect." § 6651(a)(1). Because we hold that Zaimes did not have reasonable cause for his failure to timely file, we need not determine whether his failure was due to willful neglect.

[11] Section 7491(c) provides that the IRS "shall have the burden of production in any court proceeding with respect to the liability of any individual for any . . . addition to tax." The IRS satisfies its burden of production under section 7491(c) for the section 6651(a)(1) addition to tax when it produces enough evidence that a reasonable finder of fact could conclude that the taxpayer failed to timely file a required federal income tax return. *See Wheeler v. Commissioner*, 127 T.C. 200, 207–08 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008); *Higbee v. Commissioner*, 116 T.C. 438, 447 (2001); 21B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5122 (2d ed. 2023) ("Compared to the several weights of the burden of persuasion, the burden of production has only one; the party must introduce sufficient evidence to support a jury finding in his behalf—that is, enough evidence that a reasonable jury could find that evidence satisfied the requisite burden of persuasion."). At trial the IRS submitted a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, showing that the IRS received a 2015 return from Zaimes

**[\*11]**  A.  *Zaimes did not timely file his 2015 return even though he mailed it on the day it was due.*

Returns for U.S. citizens and residents using the calendar year for their tax year "shall be filed on or before" April 15 of the following year. § 6072(a). "When the last day prescribed . . . for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act is considered timely if it is performed on the next succeeding day which is not Saturday, Sunday, or a legal holiday." § 7503; *see also* Treas. Reg. § 301.7503-1(a) (providing that "[s]ection 7503 applies to acts to be performed by the taxpayer (such as, the filing of any return of, and the payment of, any income . . . tax)"). The filing due date for calendar-year-2015 returns was April 15, 2016. § 6072(a). Because this day was District of Columbia Emancipation Day, and because the next two days were Saturday and Sunday, a filing made on April 18, 2016, is "considered timely." § 7503. Under Treasury Regulation § 1.6081-4(a), an individual taxpayer "will be allowed an automatic 6-month extension of the time to file the return after the time prescribed for filing the return" if the taxpayer applies to the IRS for the extension. Zaimes applied for such an extension for his 2015 return. The due date for the return was therefore extended from April 15, 2016, to October 15, 2016. *See id.* But because October 15, 2016, was a Saturday, a filing of his return made on Monday, October 17, 2016, would have been "considered timely." *See* § 7503.

A taxpayer's return is considered filed only when delivered to the IRS. *United States v. Lombardo*, 241 U.S. 73, 76 (1916). Section 7502 and its related regulations provide rules by which a return will be deemed delivered when it is mailed. The relevant provisions of section 7502 are reproduced below:

---

only on November 13, 2017. Because Zaimes's 2015 return was due October 17, 2016, the IRS has satisfied its burden of production for the section 6651(a)(1) addition to tax. Therefore, Zaimes must "come forward with evidence sufficient to persuade a court that the [IRS's] determination is incorrect." *Higbee*, 116 T.C. at 447; *see also Mason v. Commissioner*, 68 T.C. 354, 356–57 (1977).

[*12] Sec. 7502. Timely mailing treated as timely filing and paying.

(a) General rule.—

(1) Date of delivery.—If any return . . . required to be filed . . . within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return . . . is required to be filed, . . . the date of the United States postmark stamped on the cover in which such return . . . is mailed shall be deemed to be the date of delivery . . . .

(2) Mailing requirements.—This subsection shall apply only if—

(A) the postmark date falls within the prescribed period or on or before the prescribed date—

(i) for the filing (including any extension granted for such filing) of the return, . . . [and]

. . . .

(B) the return . . . was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return . . . is required to be filed . . . .

(b) Postmarks.—This section shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary.

(c) Registered and certified mailing; electronic filing.—

(1) Registered mail.—For purposes of this section, if any return . . . is sent by United States registered mail—

(A) such registration shall be prima facie evidence that the return . . . was delivered to the agency, officer, or office to which addressed; and

[*13]

(B) the date of registration shall be deemed the postmark date.

(2) Certified mail; electronic filing.—The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

. . . .

(f) Treatment of private delivery services.—

(1) In general.—Any reference in this section to the United States mail shall be treated as including a reference to any designated delivery service, and any reference in this section to a postmark by the United States Postal Service shall be treated as including a reference to any date recorded or marked as described in paragraph (2)(C) by any designated delivery service.

(2) Designated delivery service.—For purposes of this subsection, the term "designated delivery service" means any delivery service provided by a trade or business if such service is designated by the Secretary for purposes of this section. The Secretary may designate a delivery service under the preceding sentence only if the Secretary determines that such service—

(A) is available to the general public,

(B) is at least as timely and reliable on a regular basis as the United States mail,

(C) records electronically to its data base, kept in the regular course of its business, or marks on the cover in which any item referred to in this section is to be delivered, the date on which such item was given to such trade or business for delivery, and

(D) meets such other criteria as the Secretary may prescribe.

(3) Equivalents of registered and certified mail.—The Secretary may provide a rule similar to the rule of paragraph (1) with respect to any service provided by a designated delivery service which is

**[\*14]**       substantially equivalent to United States registered or certified mail.

The Treasury Department has issued regulations under section 7502. Treas. Reg. § 301.7502-1. The relevant provisions of these regulations are reproduced below:

§ 301.7502-1 Timely mailing of documents . . . treated as timely filing . . . .

(a) *General rule.* Section 7502 provides that, if the requirements of that section are met, a document . . . is deemed to be filed . . . on the date of the postmark stamped on the envelope or other appropriate wrapper (envelope) in which the document . . . was mailed. Thus, if the envelope that contains the document . . . has a timely postmark, the document . . . is considered timely filed . . . even if it is received after the last date, or the last day of the period, prescribed for filing the document . . . . Except as provided in . . . paragraph (d) of this section, relating to electronically filed documents, section 7502 is applicable . . . only if the document . . . is mailed in accordance with paragraph (c) of this section and is delivered in accordance with paragraph (e) of this section.

. . . .

(c) *Mailing requirements—*

(1) *In general.* Section 7502 does not apply unless the document . . . is mailed in accordance with the following requirements:

(i) *Envelope and address.* The document . . . must be contained in an envelope, properly addressed to the agency, officer, or office with which the document is required to be filed . . . .

(ii) *Timely deposited in U.S. mail.* The document . . . must be deposited within the prescribed time in the mail in the United States with sufficient postage prepaid. . . .

(iii) *Postmark—*

(A) *U.S. Postal Service postmark.* If the postmark on the envelope is made by the U.S. Postal Service, the postmark must bear a date on or before the last date, or the last

[*15]

day of the period, prescribed for filing the document . . . . If the postmark does not bear a date on or before the last date, or the last day of the period, prescribed for filing the document . . . , the document . . . is considered not to be timely filed . . . , regardless of when the document . . . is deposited in the mail. Accordingly, the sender who relies upon the applicability of section 7502 assumes the risk that the postmark will bear a date on or before the last date, or the last day of the period, prescribed for filing the document . . . . See, however, paragraph (c)(2) of this section with respect to the use of registered mail or certified mail to avoid this risk. If the postmark on the envelope is made by the U.S. Postal Service but is not legible, the person who is required to file the document . . . has the burden of proving the date that the postmark was made. Furthermore, if the envelope that contains a document . . . has a timely postmark made by the U.S. Postal Service, but it is received after the time when a document . . . postmarked and mailed at that time would ordinarily be received, the sender may be required to prove that it was timely mailed.

(B) *Postmark made by other than U.S. Postal Service*—

(*1*) *In general.* If the postmark on the envelope is made other than by the U.S. Postal Service—

(*i*) The postmark so made must bear a legible date on or before the last date, or the last day of the period, prescribed for

[*16]

filing the document . . . and

(*ii*) The document . . . must be received by the agency, officer, or office with which it is required to be filed not later than the time when a document . . . contained in an envelope that is properly addressed, mailed, and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the U.S. Postal Service on the last date, or the last day of the period, prescribed for filing the document . . . .

(*2*) *Document . . . received late*. If a document . . . described in paragraph (c)(1)(iii)(B)(*1*) is received after the time when a document . . . so mailed and so postmarked by the U.S. Postal Service would ordinarily be received, the document . . . is treated as having been received at the time when a document . . . so mailed and so postmarked would ordinarily be received if the person who is required to file the document . . . establishes—

(*i*) That it was actually deposited in the U.S. mail before the last collection of mail from the place of deposit that was postmarked (except for the metered mail) by the U.S. Postal Service on or before the last date, or the

17

**[*17]**

last day of the period, prescribed for filing the document . . . ;

(*ii*) That the delay in receiving the document . . . was due to a delay in the transmission of the U.S. mail; and

(*iii*) The cause of the delay.

(*3*) *U.S. and non-U.S. postmarks.* If the envelope has a postmark made by the U.S. Postal Service in addition to a postmark not so made, the postmark that was not made by the U.S. Postal Service is disregarded, and whether the envelope was mailed in accordance with this paragraph (c)(1)(iii)(B) will be determined solely by applying the rule of paragraph (c)(1)(iii)(A) of this section.

(2) *Registered or certified mail.* If the document . . . is sent by U.S. registered mail, the date of registration of the document . . . is treated as the postmark date. If the document . . . is sent by U.S. certified mail and the sender's receipt is postmarked by the postal employee to whom the document . . . is presented, the date of the U.S. postmark on the receipt is treated as the postmark date of the document . . . . Accordingly, the risk that the document . . . will not be postmarked on the day that it is deposited in the mail may be eliminated by the use of registered or certified mail.

(3) *Private delivery services.* Under section 7502(f)(1), a service of a private delivery service (PDS) may be treated as an equivalent to United States mail for purposes of the postmark rule if the Commissioner

**[*18]** determines that the service satisfies the conditions of section 7502(f)(2). Thus, the Commissioner may, in guidance published in the Internal Revenue Bulletin (see § 301.601(d)(2)(ii)(*b*) of this chapter), prescribe procedures and additional rules to designate a service of a PDS for purposes of the postmark rule of section 7502(a).

(d) *Electronically filed documents—*

(1) *In general.* A document filed electronically with an electronic return transmitter (as defined in paragraph (d)(3)(i) of this section and authorized pursuant to paragraph (d)(2) of this section) in the manner and time prescribed by the Commissioner is deemed to be filed on the date of the electronic postmark (as defined in paragraph (d)(3)(ii) of this section) given by the authorized electronic return transmitter. Thus, if the electronic postmark is timely, the document is considered filed timely although it is received by the agency, officer, or office after the last date, or the last day of the period, prescribed for filing such document.

(2) *Authorized electronic return transmitters.* The Commissioner may enter into an agreement with an electronic return transmitter or prescribe in forms, instructions, or other appropriate guidance the procedures under which the electronic return transmitter is authorized to provide taxpayers with an electronic postmark to acknowledge the date and time that the electronic return transmitter received the electronically filed document.

(3) *Definitions—*

(i) *Electronic return transmitter.* For purposes of this paragraph (d), the term electronic return transmitter has the same meaning as contained in section 3.01(4) of Rev. Proc. 2000-31 (2000-31 I.R.B. 146 (July 31, 2000)) (see § 601.601(d)(2) of this chapter) or in procedures prescribed by the Commissioner.

(ii) *Electronic postmark.* For purposes of this paragraph (d), the term electronic postmark means a record of the date and time

[*19] (in a particular time zone) that an authorized electronic return transmitter receives the transmission of a taxpayer's electronically filed document on its host system. However, if the taxpayer and the electronic return transmitter are located in different time zones, it is the taxpayer's time zone that controls the timeliness of the electronically filed document.

(e) *Delivery*—

(1) *General rule.* Except as provided in section 7502(f) and paragraphs (c)(3) and (d) of this section, section 7502 is not applicable unless the document . . . is delivered by U.S. mail to the agency, officer, or office with which the document is required to be filed or to which payment is required to be made.

(2) *Exceptions to actual delivery*—

(i) *Registered and certified mail.* In the case of a document . . . sent by registered or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued and that the envelope was properly addressed to the agency, officer, or office constitutes prima facie evidence that the document was delivered to the agency, officer, or office. Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated PDS as provided for by paragraph (e)(2)(ii) of this section, are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

(ii) *Equivalents of registered and certified mail.* Under section 7502(f)(3), the Secretary may extend the prima facie evidence of delivery rule of section

**[\*20]** 7502(c)(1)(A) to a service of a designated PDS, which is substantially equivalent to United States registered or certified mail. Thus, the Commissioner may, in guidance published in the Internal Revenue Bulletin (see § 601.601(d)(2)(ii)(*b*) of this chapter), prescribe procedures and additional rules to designate a service of a PDS for purposes of demonstrating prima facie evidence of delivery of a document pursuant to section 7502(c).

Because Zaimes resided in California when he filed his Petition, this case is appealable to the U.S. Court of Appeals for the Ninth Circuit absent stipulation from the parties otherwise. *See* § 7482(b)(1)(G)(i). We will therefore follow controlling precedent of the Ninth Circuit on any issue in this case. *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). In *Baldwin v. United States*, 921 F.3d 836 (9th Cir. 2019), the Ninth Circuit determined which types of evidence are admissible to prove delivery under Treasury Regulation § 301.7502-1(e). In that case the taxpayers were seeking an income tax refund. *Baldwin*, 921 F.3d at 839. To receive the refund the taxpayers needed to file an amended return by October 15, 2011. *Id*. The taxpayers claimed that they mailed an amended return to the IRS during June 2011, but they conceded that the IRS never received the return. *Id*. at 842. The taxpayers relied on the testimony of two of their employees to prove that they had mailed the return by October 15, 2011. *Id*. The Ninth Circuit concluded that the taxpayers could prove delivery only by showing that (1) the return was actually delivered to the IRS, *see* § 7502(a); *Lombardo*, 241 U.S. at 76; (2) the return was e-filed with the IRS on or before the filing deadline, *see* § 7502(c)(2); Treas. Reg. § 301.7502-1(d)(1), (e)(1); or (3) the return was mailed to the IRS by certified mail, registered mail, or a PDS on or before the filing deadline, *see* Treas. Reg. § 301.7502-1(e)(2)(i); *Baldwin*, 921 F.3d at 841–42. The taxpayers could not rely on evidence that the amended return was mailed by regular mail to prove it was delivered. *Baldwin*, 921 F.3d at 842, 844. The Court concluded that the return was not delivered and had therefore not been filed. *Id*. at 844.

Zaimes contends that he timely filed his 2015 return because he mailed the return on the evening of the day it was due.

**[\*21]** Zaimes's return was not delivered to the IRS on or before the return's due date. *See Lombardo*, 241 U.S. at 76. Therefore, his return is considered timely filed only if it met the requirements of section 7502 and the related regulations to section 7502. There are four such requirements. First, the return must have been eventually delivered to the IRS sometime (or one of the exceptions to this eventual-delivery requirement must be applicable). Treas. Reg. § 301.7502-1(e)(1) (referring to the exceptions under section 7502(f) and Treasury Regulation § 301.7502-1(c)(3) and (d)); *id.* para. (e)(2). Second, the envelope containing Zaimes's return (which also contained Zaimes's check) had to be properly addressed. *Id.* para. (c)(1)(i). Third, that envelope had to be deposited in the mail with sufficient postage. *Id.* subdiv. (ii). Fourth, the postmark on the envelope containing Zaimes's return had to satisfy the requirements of Treasury Regulation § 301.7502-1(c)(1)(iii)(B). As explained below, we conclude that the four requirements were not met. Therefore, Zaimes's return was not timely filed.

1.      *Zaimes's return was not delivered to the IRS.*

First, the return must be eventually delivered to the IRS or must be presumed delivered under one of the exceptions listed in Treasury Regulation § 301.7502-1(e)(1). The exceptions are only for returns filed electronically or returns mailed by registered mail, certified mail, or a PDS. Returns that are e-filed with the IRS are "deemed to be filed on the date of the electronic postmark . . . given by the authorized electronic return transmitter." *Id.* para. (d)(1). For returns sent by registered or certified mail, proof that the document was properly registered (in the case of registered mail) or that a postmarked certified mail sender's receipt was properly issued (in the case of certified mail) and that the envelope was properly addressed (in the case of both registered and certified mail) constitutes prima facie evidence that the return was delivered. § 7502(c); Treas. Reg. § 301.7502-1(e)(2)(i). Proof of proper use of a PDS by the taxpayer also constitutes prima facie evidence that the return was delivered. § 7502(f); Treas. Reg. § 301.7502-1(e)(2)(i). Zaimes concedes that (1) his mailed return was never delivered to the IRS, (2) he did not e-file his return on or before October 17, 2016, and (3) he did not send his return by certified or registered mail or by a PDS. Zaimes instead argues that his testimony stating that he mailed his return by regular mail and the other evidence he offered at trial in support of his testimony are sufficient to prove that he timely filed his return. That argument is mistaken. *See Baldwin*, 921 F.3d at 841–42. Therefore, the requirement that Zaimes's return be delivered to the IRS was not met.

**[*22]**    2.    *Zaimes's envelope containing his return was not properly addressed.*

Second, the return must be "contained in an envelope, properly addressed to the agency, officer, or office with which the document is required to be filed." Treas. Reg. § 301.7502-1(c)(1)(i). To file his mailed return, Zaimes was required to send the return to the following address: "Internal Revenue Service, P.O. Box 7704, San Francisco, CA 94120-7704." *See* 2015 Instructions for Form 1040, U.S. Individual Income Tax Return, at 105. That address had to appear on the envelope. *See* Treas. Reg. § 301.7502-1(c)(1)(i). The record does not show what address was on the envelope. Therefore, we do not find that the envelope was properly addressed.

3.    *Zaimes's envelope containing his return did not have sufficient postage.*

Third, the return must be "deposited within the prescribed time in the mail of the United States with sufficient postage prepaid." *Id.* subdiv. (ii). Zaimes did not present evidence that there was sufficient postage on the envelope containing his return. His brief claims that the envelope had a "postage strip on it covering the necessary postage." The brief says that his testimony supports this factual assertion. However, his testimony never mentions postage. Thus, we do not find that the envelope had sufficient postage.

4.    *Zaimes's return did not satisfy Treasury Regulation § 301.7502-1(c)(1)(iii)(B).*

Fourth, the mailed return must satisfy Treasury Regulation § 301.7502-1(c)(1)(iii)(B). One requirement of that provision is that the envelope containing the return had to have a legible postmark dated on or before October 17, 2016. This requirement is imposed by Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*i*). Zaimes did not introduce a copy of the envelope showing a legible and timely postmark. However, he credibly testified that his envelope bore a privately metered postmark dated October 17, 2016. The return therefore satisfies Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*i*). *See Perry Segura & Assocs., Inc. v. Commissioner*, T.C. Memo. 1975-80, 1975 Tax Ct. Memo LEXIS 294, at *8 (allowing the taxpayer to use extrinsic evidence to prove that its envelope bore a timely postmark because the original envelope and postmark had been destroyed in transit and was therefore unavailable for trial).

**[\*23]** But in addition to proving that his envelope had a timely postmark, Zaimes must prove that either Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*) or (*2*) is satisfied. Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*) requires that Zaimes's return was received by the IRS in the time it would ordinarily take for the IRS to receive mail if the mail had been sent by the same class of mail as Zaimes's return was sent and if the USPS had postmarked the mail on the last date prescribed for filing his return. For example, if it would ordinarily have taken three days for mail to arrive at the IRS had it been postmarked by the USPS and mailed from the same location as Zaimes's return had been mailed on October 17, 2016, Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*) would be satisfied if Zaimes's return was received by the IRS three days after it was mailed. However, if Zaimes's return was received by the IRS ten days after it was mailed, Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*) would not be satisfied.

Zaimes's mailed return was never received by the IRS, which means it failed to satisfy Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*).[12]

Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*2*) has four requirements. First, Zaimes's return had to be received by the IRS. *See* Treas. Reg. § 301.7502-1(c)(1)(iii)(B)(*2*) ("If a document . . . described in paragraph (c)(1)(iii)(B)(*1*) is received after the time when a document . . . would ordinarily be received . . ."). Second, the return had to be mailed before the last collection of mail on October 17, 2016. *See id.* subdiv. (iii)(B)(*2*)(*i*). Third, the delay in the IRS's receiving the return had to be due to a delay in the transmission of the mail. *See id.* subdiv. (iii)(B)(*2*)(*ii*). Fourth, the cause of the return's mailing delay had to be established. *See id.* subdiv. (iii)(B)(*2*)(*iii*).

The first requirement was not met. As discussed *supra*, Zaimes's return was never received by the IRS. The second requirement also was

---

[12] Zaimes's brief does not assert that the IRS received the mailed return. Zaimes contends that receipt by the IRS is not required because, in his view, Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*) requires only that an envelope bearing a privately metered postmark "be mailed the same way a USPS postmarked envelope would be" and "be sent by the same class of mail as it would be if it had a USPS postmark." By contrast, the IRS contends that the regulatory requirement is that "the non-USPS postmarked document was *actually* received by [the IRS] by the time that an otherwise identical USPS postmarked document would ordinarily be received." The IRS's view is correct because it reflects the plain language of Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*1*)(*ii*).

**[\*24]** not met. Zaimes did not present any evidence showing that his return was mailed before the last collection of mail on October 17, 2016. *See id.* subdiv. (iii)(B)(*2*)(*i*). Therefore, Zaimes's return failed to satisfy the requirements of Treasury Regulation § 301.7502-1(c)(1)(iii)(B)(*2*).

In sum, Zaimes has failed to prove he timely filed his 2015 return. We now will turn to whether Zaimes had reasonable cause for failing to timely file his return.

> B.   *Zaimes did not have reasonable cause for failing to timely file his 2015 return.*

Zaimes argues he had four reasons for failing to file on time. As explained below, we reject all four of Zaimes's arguments. Thus, Zaimes is liable for the addition to tax under section 6651(a)(1).

> 1.   *The IRS's instructions for filing Form 1040 were not reasonable cause for Zaimes's failure to file his 2015 return on time.*

Zaimes contends that he had reasonable cause for failing to timely file his return because the IRS's instructions for filing Form 1040 do not expressly state that a return must be sent by registered or certified mail or that taxpayers bear the risk of nondelivery when they try to file their returns by regular mail. Zaimes's testimony at trial on whether he saw the instructions before mailing his return was equivocal,[13] and we find that he did not see or rely on the instructions when he mailed his return. Therefore, the instructions did not cause his failure to timely file his return.

> 2.   *The lack of notice from the IRS until December 4, 2017, was not reasonable cause.*

Zaimes argues that he had reasonable cause for failing to timely file his return on October 17, 2016, because the IRS did not notify him until December 4, 2017, the date it processed his e-filed return, that his 2015 return had been filed late. Zaimes's argument is based on the

---

[13] When asked by the Court whether he had seen the instructions before mailing his return, Zaimes testified: "I don't have a specific recollection of seeing this document your Honor." Later, Zaimes further testified: "And while I can't say that I saw [the instructions] in 2015 . . . . I must have seen [the instructions] in an IRS publication somewhere." Thus, at two different points in his testimony, Zaimes failed to definitively answer whether he saw the instructions before mailing his return.

**[\*25]** premise that his April 15, 2016, extension request placed the IRS on notice that he would file a tax return on or before the extended deadline of October 17, 2016, and that it was reasonable for him to expect the IRS to notify him when that extended filing deadline passed without its receiving the return.

The IRS's actions or inactions after October 17, 2016, did not cause Zaimes's failure to timely file his return on or before October 17, 2016. We therefore hold that the IRS's failure to notify Zaimes that it did not receive his return until after the October 17, 2016, deadline passed was not reasonable cause for his failing to timely file the return.

> 3.  *The conversations with Izykowski were not reasonable cause.*

Zaimes next argues that he had reasonable cause because of his conversations with Izykowski before mailing his return. Relying on legal advice from a tax professional on the taxpayer's filing obligations can be reasonable cause for the taxpayer's failure to timely file. *See United States v. Boyle*, 469 U.S. 241, 251 (1985); *Grecian Magnesite Mining, Indus. & Shipping Co. v. Commissioner*, 149 T.C. 63, 94 (2017), *aff'd*, 926 F.3d 819 (D.C. Cir. 2019). However, a tax professional's failure to give advice (i.e., the lack of advice) is not reasonable cause. *See N.Y. State Ass'n of Real Est. Bds. Grp. Ins. Fund v. Commissioner*, 54 T.C. 1325, 1336 (1970) ("A taxpayer is not relieved from the legal obligation to file, and the additions to tax for failing to fulfill that obligation merely because [he] was not offered unsolicited advice.").

Zaimes testified that "at no time prior to October 17, 2016, had . . . [Izykowski] told me, recommended to me, or even suggested to me that I send my tax return by certified mail or registered mail." But the fact that Izykowski did not advise Zaimes that he could file his return by registered or certified mail did not give him reasonable cause. *See id*.

In addition to the testimony discussed above, when asked during cross-examination whether Izykowski advised him that he was required to send his return by regular mail, Zaimes responded: "No, but she suggested I do that. She did not offer electronic filing, and she said that the reason for that was because the tax return was so voluminous it made better sense to mail it." On brief Zaimes contends that this testimony proved that Izykowski had advised him that mailing his return by regular mail was "sufficient." But sufficient for what purpose? Here, we have only Zaimes's recollection of what Izykowski advised him.

**[*26]** There was no written record of the advice, and Izykowski did not testify. Under these circumstances, we do not conclude that Izykowski advised Zaimes that a regular mailing was sufficient to avoid the risk that the return would not be delivered to the IRS.

To evaluate why Zaimes's return was not timely filed, we also consider why the return was not e-filed. Had Izykowski e-filed the return, the risk of nondelivery through the mails would have been avoided. Furthermore, e-filing would have imposed no time cost on Zaimes. Zaimes's cross-examination testimony claims that Izykowski advised against e-filing because of the size of the return. We are not persuaded this is true. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986) ("[W]e are not required to accept the self-serving testimony of [a taxpayer] . . . as gospel."). If Izykowski thought Zaimes's 2015 return was too big to e-file, it is unclear why Izykowski e-filed the same return (with only a minor adjustment, *see supra* note 5) in November 2017. We therefore conclude that Izykowski did not advise against e-filing the return that Zaimes mailed to the IRS.

Therefore, for the reasons mentioned above, Zaimes's conversations with Izykowski were not reasonable cause.

4. *Nondelivery of his mailed return was not reasonable cause.*

Finally, Zaimes argues that he had reasonable cause for failing to timely file his return because the USPS did not deliver his return. The USPS's losing a taxpayer's return in the mail can be reasonable cause for the taxpayer's failure to timely file a return. *See, e.g.*, *Ferguson v. Commissioner*, 14 T.C. 846, 850 (1950). However, Zaimes failed to prove that (1) he correctly addressed the envelope in which he mailed his return or (2) he placed sufficient postage on the envelope. *See supra* OPINION, Part I.A.2 and 3. Zaimes has failed to prove that the lack of delivery was caused by the USPS's error and not his own. Therefore, the nondelivery of his return was not reasonable cause.

In sum, Zaimes failed to prove that he timely filed his return or that he had reasonable cause for his failure to timely file his return. The IRS did not receive a return from Zaimes until November 13, 2017, which was more than a year after the October 17, 2016, due date. *See* § 6651(a)(1). The IRS correctly assessed the maximum addition to tax allowed under section 6651(a)(1). We therefore sustain in full the Office

**[\*27]** of Appeals' determination that Zaimes is liable for the section 6651(a)(1) addition to tax.

II.  *Zaimes is liable for the section 6651(a)(2) addition to tax for failing to timely pay the amount shown as tax on his 2015 return.*

We next address whether Zaimes is liable for the addition to tax under section 6651(a)(2) for failing to timely pay the amount shown as tax on his return. Section 6651(a)(2) provides:

> In case of failure . . . to pay the amount shown as tax on any return . . . on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . .

Section 6651(a)(2) does not specifically address whether reasonable cause for the taxpayer's failure to pay by the start of an additional month can excuse the 0.5% incremental addition to tax for the taxpayer's failure to pay during that month. For example, could Zaimes's attempt to pay a portion of his unpaid tax liability on October 17, 2016, serve as reasonable cause for his failure to pay that portion on November 15, 2016, so as to absolve him of the 0.5% incremental addition to tax for failing to pay that portion for the "additional month" of November 15 to December 15, 2016? Under two regulatory provisions related to section 6651(a)(2), reasonable cause for a taxpayer's failure to pay by the start of an additional month does not excuse the taxpayer from the 0.5% incremental addition to tax.[14] Caselaw agrees that section

---

[14] First, Treasury Regulation § 301.6651-1(a)(2) provides:

In case of failure to pay the amount shown as tax on any return . . . on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), there shall be added to the tax shown on the return the amount specified below unless the failure to pay the tax within the prescribed time is shown . . . to be due to reasonable cause and not to willful neglect.

**[*28]** 6651(a)(2) should be interpreted so. *See Estate of Hartsell v. Commissioner*, T.C. Memo. 2004-211, 2004 WL 2094750, at *3 ("The reasonable cause standard is a one-time test to be passed or failed at the payment due date."); *Indus. Indem. v. Snyder*, 41 B.R. 882, 883 (E.D. Wash. 1984) ("[T]he 'reasonable cause' standard is . . . a one-time test to be passed or failed at the tax due date . . . ."); *Photographic Assistance Corp. v. United States*, No. 97-cv-3561, 1998 WL 786218, at *2 (N.D. Ga. Oct. 6, 1998) ("[The taxpayer's] failure to offer any explanation for its failure to pay its taxes when they were due in 1987 and 1988 prevents any finding of reasonable cause under § 6651(a)(2).").

Section 6651(b)(2) provides that "[f]or purposes of . . . [section 6651(a)(2)], the amount of tax shown on the return shall, for purposes of computing the addition for any month, be reduced by the amount of any part of the tax which is paid on or before the beginning of such month and by the amount of any credit against the tax which may be claimed on the return."

The IRS calculated the addition to tax by assuming that the tax shown on the return was $185,615 and by making section 6651(b)(2) reductions for (1) the $40,000 payment made on February 1, 2016, a reduction that began with the month beginning on April 18, 2016, (2) the $38,000 payment made on April 15, 2016, a reduction that began with the month beginning on April 18, 2016, and (3) the $100,000 payment made on March 15, 2018, a reduction that began with the month beginning on March 15, 2018. Zaimes does not dispute the correctness of this calculation except that he argues that his failure to timely pay was due to reasonable cause and not willful neglect.

Zaimes's payment for his 2015 tax liability was due April 18, 2016. *See* § 6151(a) ("[W]hen a return of tax is required under this title or regulations, the person required to make such return . . . shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return)."); Treas. Reg. § 1.6081-4(c) (providing that the "automatic extension of time for

---

Second, Treasury Regulation § 301.6651-1(c)(1) provides:

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this chapter) if he paid on the due date.

**[*29]** filing a return . . . will not extend the time for payment of any tax due on such return"); *supra* OPINION, p. 11 (explaining that individual taxpayers had until April 18, 2016, to timely file their 2015 returns if they did not receive an extension). Therefore, Zaimes must prove he had reasonable cause for failing to timely pay on April 18, 2016.[15] The amount that Zaimes was required to pay on April 18, 2016, was $110,693, equal to the $185,615 of tax shown on the e-filed return, minus (1) the $40,000 payment made on February 1, 2016, and (2) the $38,000 payment made on April 15, 2016.

Zaimes's argument is that he had reasonable cause for not making the payment because he "mailed his . . . partial payment check on October 17, 2016." However, even assuming arguendo that placing a payment in the mail can constitute reasonable cause for failing to make the payment, we conclude that Zaimes did not have reasonable cause for two reasons. First, there must be reasonable cause for not making the entire payment. *See United States v. Sanford* (*In re Sanford*), 979 F.2d 1511, 1513–14 (11th Cir. 1992). Zaimes's argument is that he had reasonable cause for not paying $58,145 (the amount of his October 17, 2016, check), but the entire amount of tax shown as due on the return (after section 6651(b)(2) adjustments) was $110,693. Second, Zaimes's payment was due April 18, 2016. The fact that Zaimes mailed a check on October 17, 2016, does not explain why he did not pay the tax shown on the return (after section 6651(b)(2) adjustments) on or before April 18, 2016. We therefore conclude that Zaimes did not have reasonable cause excusing his failure to timely pay the tax shown on the return (after section 6651(b)(2) adjustments).

Treasury Regulation § 301.6651-1(c)(1) provides that reasonable cause excusing the failure to timely pay exists if the taxpayer "would suffer an undue hardship (as described in § 1.6161-1(b)) if he paid on the due date." Zaimes does not argue that he would have suffered an undue hardship if he paid the tax shown on the return (after section 6651(b)(2) adjustments) on the due date. We will not make the argument on his behalf. *See Feigh v. Commissioner*, 152 T.C. 267, 277 (2019) ("Our job is to consider the issues advanced by the parties, not to craft alternative arguments never raised.").

---

[15] The addition to tax for failing to timely pay the tax shown on a return is not imposed if "it is shown that such failure is due to reasonable cause and not due to willful neglect." § 6651(a)(2). Because we hold that Zaimes did not have reasonable cause for his failure to timely pay, we need not determine whether his failure was due to willful neglect.

**[\*30]** Zaimes conceded that he did not pay the tax shown on his 2015 return by its due date of April 18, 2016. He also failed to prove that he had reasonable cause for failing to do so. Therefore, Zaimes is fully liable for the section 6651(a)(2) addition to tax as determined by the IRS.

III.   *Conclusion*

For all the aforementioned reasons, we sustain in full the Office of Appeals' determination.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*